**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**THEODOROS GIANNOPOULOS and**
**ALEXANDRA GIANNOPOULOS on**
**behalf of themselves and all others**
**similarly situated**                                                  **PLAINTIFFS**

**VS.**                          **NO.**_____

**IBERIA LINEAS AEREAS DE**
**ESPANA, S.A. and INTERNATIONAL**
**AIRLINES GROUP, S.A.**                                          **DEFENDANTS**

                                                        **JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiffs, Theodoros Giannopoulos and Alexandra Giannopolous, individually and on behalf of all others similarly situated ("the Class"), bring this action against Defendant Iberia Lineas Aereas de Espana, S.A. ("Iberia Airlines") and its parent company, International Airlines Group, S.A. ("IAG") (collectively "Iberia"). Plaintiffs seek certification of their claims against Iberia Airlines and IAG as a class action. Plaintiffs, by and through their attorneys, submit this Class Action Complaint (the "Complaint") and allege as follows:

**I.      NATURE OF THE ACTION**

1.      This proposed class action concerns Iberia's breach of contract and violation of Regulation No. 261/2004 of the European Parliament and European Council ("EU Regulation 261"). Under Iberia's Conditions of Contract and EU Regulation 261, passengers with confirmed reservations on flights departing from or destined to an airport in a member state of the European Union are entitled, with certain exceptions described below, to be paid by Iberia a set amount of compensation when their flights are canceled or delayed for three hours or more. Iberia has failed to honor this right under the Conditions of Contract and under EU Regulation

261 as to the named Plaintiffs and the members of the Class. This action seeks damages for the named Plaintiffs and each member of the Class in the amount established by the Conditions of Contract and EU Regulation 261.

## II.   **JURISDICTION AND VENUE**

2.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that:

   (a)   This is a class action involving 100 or more class members,

   (b)   Plaintiffs, permanent residents of Illinois, are diverse in citizenship from Defendant Iberia, which is incorporated and has its principal place of business in Spain.

3.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

   (a)   The Class, is so numerous that joinder of all members is impractical;

   (b)   There are substantial questions of law and fact common to the Class including those set forth in greater particularity below;

   (c)   This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

   i.     Questions of law and fact enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

   ii.    A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

   iii.   The relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

   iv.    There are no unusual difficulties foreseen in the management of this class action.

4.      The Court has personal jurisdiction over Iberia, which has at least minimum contacts with the State of Illinois because Iberia has conducted business there and has availed itself of Illinois' markets through its operations, offices, sales, and marketing efforts.

## III.    PARTIES

5.      Plaintiffs Theodoros Giannopoulos and Alexandra Giannopolous are permanent residents of, and domiciled in, Illinois.

6.      Defendant Iberia Airlines is a Spanish corporation organized under the laws of the Kingdom of Spain and maintains is principal place of business in Spain.

7.      Defendant IAG is an airline holding company formed on January 21, 2011 out of the merger between Iberia Airlines and British Airways.  Defendant IAG is the parent company of its wholly owned subsidiary, Iberia Airlines, and is a publicly traded company with shares traded on exchanges in both London and Madrid.

## IV.    FACTUAL ALLEGATIONS

### A.    EU REGULATION 261.

8.      EU Regulation 261 was adopted by the European Parliament and the Council of the European Union on February 11, 2004.  A copy is attached hereto as Exhibit 1.  The purpose of EU Regulation 261 is, in part, to provide standardized compensation - separate from individualized compensation which may be provided by other laws upon individualized proof - for the "serious trouble and inconvenience" inevitably suffered by all passengers who experience flight cancellations or lengthy delays, particularly on international carrier routes.

9.      Pursuant to Article 3, EU Regulation 261 applies to passengers with confirmed reservations on (a) flights departing from an airport located in the territory of a member state of

the European Union, and (b) flights departing from a country outside the European Union to an

airport in the territory of a member state of the European Union, if the operating carrier of the

flight concerned is an air carrier with an operating license granted by a member state of the

European Union.

10.     Pursuant to Article 5, confirmed passengers on flights covered by Article 3, in

case of cancellation of the flight "have the right to compensation by the operating air carrier in

accordance with Article 7 of the Regulation unless:  (a) they are informed of the cancellation at

least two weeks before the scheduled time of departure; or (b) they are informed of the

cancellation between two weeks and seven days before the scheduled time of departure and are

offered re-routing, allowing them to depart no more than two hours before the scheduled time of

departure and to reach their final destination less than four hours after the scheduled time of

arrival; or (c) they are informed of the cancellation less than seven days before the scheduled

time of departure and are offered re-routing, allowing them to depart no more than one hour

before the scheduled time of departure and to reach their final destination less than two hours

after the scheduled time of arrival."  Also under Article 3, an "operating air carrier shall not be

obliged to pay compensation in accordance with Article 7, if it can prove that the cancellation is

caused by extraordinary circumstances which could not have been avoided even if all reasonable

measures had been taken."

11.     Pursuant to Article 7, passengers eligible under Articles 3 and 5 on flights that

were cancelled, "shall receive compensation amounting to:  (a) EUR 250 for all flights of 1500

kilometres or less; (b) EUR 400 for all intra-Community flights of more than 1500 kilometres,

and for all other flights between 1500 and 3500 kilometres; (c) EUR 600 for all flights not falling under (a) or (b)."

12.     Article 7 also provides that the operating carrier may reduce the compensation amounts by 50% when "passengers are offered re-routing to their final destination on an alternative flight, the arrival time of which does not exceed the scheduled arrival time of the flight originally booked (a) by two hours, in respect of all flights of 1500 kilometres or less; or (b) by three hours, in respect of all intra-Community flights of more than 1500 kilometres and for all other flights between 1500 and 3500 kilometres; or (c) by four hours, in respect of all flights not falling under (a) or (b)."

13.     On November 19, 2009, in *Sturgeon v. Condor Flugdienst GmbH,* the European Court of Justice ruled that "Article 5, 6 and 7 of Regulation No 261/2004 must be interpreted as meaning that passengers whose flights are delayed may be treated, for the purposes of the application of the right to compensation, as passengers whose flights are cancelled and may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours."  In addition, the European Court of Justice ruled that "Article 5(3) of Regulation No 261/2004 must be interpreted as meaning that a technical problem in an aircraft which leads to the cancellation or delay of a flight is not covered by the concept of "extraordinary circumstances" within the meaning of that provision, unless that problem stems from events which, by their nature or origin, are not inherent in the normal exercise of the activity of the air carrier concerned and are beyond its actual control."

14.     The right to compensation under Articles 5, 6 and 7 of EU Regulation 261 is separate from any right to compensation or damages, based upon individualized proof, any passenger may have premised on a separate cause of action under separate law.

**B.     IBERIA'S CONTRACTUAL OBLIGATION TO THE CLASS MEMBERS.**

15.     Iberia has an operating license granted by the Kingdom of Spain, a member of the European Union.  Each passenger carried on a flight operated by Iberia is issued a ticket which includes a Conditions of Contract.  A copy of the Iberia's Conditions of Contract is attached hereto as Exhibit 2.  Iberia's contract with its passengers gives notice of rights pursuant to, and incorporates by reference, EU Regulation 261.

16.     Iberia's Conditions of Contract provides notices to passengers in the event of delay and/or cancellation that compensation is provided, "As established in the European Parliament and Council Regulation (EC) No. 261/2004 of 11th February."  Under Iberia's Conditions of Contract, the provisions read as follows:

"**NOTICE TO PASSENGERS IN THE EVENT OF CANCELLATION**

As established in the European Parliament Council Regulation (EC) No. 261/2004 of 11th February, compensation is fixed in the event of a flight cancellation unless the latter is due to extraordinary circumstances.  The carrier is furthermore liable for the provision of immediate aid and assistance to affected passengers.

**NOTICE TO PASSENGERS IN THE EVENT OF DELAY**

As established in the European Parliament Council Regulation (EC) No. 261/2004 of 11th February, in the event of a long delay in relation to the scheduled departure time of flight, passengers are entitled to immediate aid and assistance throughout the duration of the delay."

17.     On information and belief, Iberia maintains a more complete Conditions of Carriage, which contains additional passenger rights.  However, Iberia does not provide its

Contract of Carriage readily to its passengers. Unlike almost every major airline, Iberia does not make its full Contract of Carriage available for viewing at its website.

18. Prior to the filing of this Complaint, Plaintiffs filed a complaint through Iberia's website and Iberia responded with an apparent form email. Iberia's response email denied Plaintiffs' request for compensation. Additionally, Iberia's form email misrepresented the availability of compensation for delays and incorrectly states that compensation is only available in cases of "overbooking."

## C. IBERIA'S OPERATIONS.

19. Iberia is the flagship airline of Spain with over 33 million passengers per year. A significant percentage of Iberia's flights are to and/or from an airport located in a member state of the European Union. A significant percentage of those flights to and/or from an airport located in a member state of the European Union are cancelled, or delayed for three hours or more, for reasons other than extraordinary circumstances. A significant percentage of the passengers on such delayed or cancelled flights are residents of the United States.

20. Iberia has repeatedly failed to pay compensation, in the amounts set forth in the Conditions of Contract and EU Regulation 261, to passengers entitled to such compensation and who are residents of the United States.

## D. FACTUAL ALLEGATIONS AS TO PLAINTIFFS RELEVANT TO CLASS ACTION CLAIMS.

21. Plaintiffs Theodoros and Alexandra Giannopolous are permanent residents of, and domiciled in Illinois.

22.     Plaintiffs Theodoros and Alexandra Giannopolous were confirmed passengers on Iberia Flight 6274 scheduled to depart on May 9, 2010 from O'Hare International Airport in Chicago, Illinois to Madrid-Barajas Airport in Madrid, Spain, an airport located in a member state of the European Union.  The same as with any United States passenger traveling to Europe, a contract incorporating the remedies available under EU Regulation 261, existed between Iberia and Plaintiffs Theodoros and Alexandra Giannopolous for Flight 6274.

23.     Flight 6274 was delayed for over three hours, and did not arrive in Madrid until more than three hours after its scheduled arrival time.  Flight 6274 was not delayed due to extraordinary circumstances.

24.     Plaintiffs Theodoros and Alexandra Giannopolous were informed of the delay after the scheduled time of departure.

25.     Because of the delay, Plaintiffs Theodoros and Alexandra Giannopolous' alternative flight was re-routed through Vienna, Austria and required an overnight stay in Vienna.  In doing so, Plaintiffs Theodoros and Alexandra Giannopolous spent an entire extra day traveling to their final destination.  They reached their final destination, Athens, Greece, approximately twenty-four hours after the scheduled time of arrival.

26.     Plaintiffs Theodoros and Alexandra Giannopolous did not receive any compensation for the delayed flight.

**E.      CLASS ACTION ALLEGATIONS.**

27.     Plaintiffs bring this action on their own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

28.     Plaintiffs bring this action as class representatives to recover compensation

required to be paid under Iberia's Conditions of Contract, Contract of Carriage and EU

Regulation 261.

29.     This action satisfies the numerosity, commonality, typicality, adequacy,

predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a)

and (b).

30.     Plaintiffs seek certification of the following class:

All persons residing in the United States who meet the following requirements:

    (1)  Such person had a confirmed reservation on a flight operated by Iberia
by motorized fixed wing aircraft schedule to arrive at its destination on
or after February 3, 2009;

    (2)  Such flight was scheduled either to depart from an airport located in
the territory of a member state to which the Treaty Establishing the
European Community ("Treaty") applies or to arrive at an airport
situated in the territory of a member state to which the Treaty applies;

    (3)  Such flight was delayed or cancelled for a reason other than
extraordinary circumstances;

    (4)  Such person was informed of the delay or cancellation less than seven
days before the scheduled time of departure and was not offered re-
routing, allowing them to depart no more than one hour before the
scheduled time of departure and to reach their final destination less
than two hours after the scheduled time of arrival;

    (5)  Such person affected by delay was delayed for at least three hours;
and

    (6)  Such person has not received compensation in the amount set forth in
Article 7 of EU Regulation 261/2004.

31.     Excluded from the Class are:

    (1)  Defendants and any entities in which Defendants have a controlling interest;

(2)  Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

(3)  The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

(4)  All persons or entities that properly execute and timely file a request for exclusion from the Class;

(5)  Any attorneys representing the Plaintiff or the Class; and

(6)  All governmental entities.

32.     Plaintiffs reserve the right to modify or amend the definition of the Class before the Court determines whether certification is appropriate.

33.     The Class is numerously comprised of over 100 people and most likely over ten thousand people who were passengers on flights operated by Iberia, the joinder of which in one action would be impracticable.  The exact number or identification of the Class members is presently unknown.  The identity of the Class members is ascertainable.  In addition to manifests, databases and rolls maintained by Iberia and its agents, the Class members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means.  The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

34.     Common questions of law and fact predominate over individual issues.  There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class.  The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a)      Whether Iberia's Conditions of Contract and Contract of Carriage require Iberia to pay compensation to the Class members;

b)      Whether EU Regulation 261 requires Iberia to pay compensation to the Class members;

c)      Whether Iberia failed to compensate the Class Members in the amounts specified in the Conditions of Contract and Contract of Carriage;

d)      Whether Iberia failed to compensate the Class Members in the amounts specified in EU Regulation 261;

e)      Whether Iberia breached its contract with the Class members by failing to pay the compensation required under the Conditions of Contract, Contract of Carriage and EU Regulation 261.

35.     Plaintiffs assert claims that are typical of the entire Class, having all been entitled to receive financial compensation pursuant to the Conditions of Contract, Contract of Carriage and EU Regulation 261 and having not received such compensation.  Plaintiffs and the Class members have similarly suffered harm arising from Iberia's failure to pay compensation as alleged in this Complaint.

36.     Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiffs will prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs are represented by experienced and able attorneys from law firms that will collectively and jointly serve as class counsel.  Class counsel have litigated numerous class actions, and Plaintiffs' counsel intend to prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs and class counsel can and will fairly and adequately protect the interests of all of the members of the Class.

37.     A class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Because of the size of each individual Class member's claims, it would not be practicable for Class members to individually seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as Iberia continues to fail to compensate passengers as required under its Conditions of Contract, Contract of Carriage and EU Regulation 261.  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## V.     CLASS CLAIMS

### COUNT ONE - BREACH OF CONTRACT

38.     Plaintiffs restate and re-allege the preceding paragraphs of the Complaint as though set forth at length herein.

39.     Iberia's Conditions of Contract, Contract of Carriage and EU Regulation 261 incorporated therein, require Iberia to compensate the Class for cancelled flights and flights delayed for three or more hours, as set forth above.

40.     Iberia has violated the Conditions of Contract and Contract of Carriage by failing to pay such compensation to the Class.

## VII.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray:

A.    That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure; that the Plaintiffs are proper class representatives; and that the best practicable notice of this action be given to members of the Class represented by the Plaintiffs;

B.    That judgment be entered against Iberia and in favor of Plaintiffs and the Class on the Cause of Action in this Complaint, for actual, compensatory damages in an amount to be determined at trial;

C.    That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against Iberia; and

D.    For all other and further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

February 3, 2011                                     Respectfully Submitted,

                                                    Jennifer W. Sprengel
                                                    **CAFFERTY FAUCHER LLP**
                                                    30 N. LaSalle Street, Suite 3200
                                                    Chicago, IL 60602
                                                    Tel:  (312) 782-4880
                                                    Fax:  (312) 782-4485

                                                    Hank Bates
                                                    **CARNEY WILLIAMS BATES**
                                                    **BOZEMAN & PULLIAM, PLLC**
                                                    11311 Arcade Drive, Suite 200
                                                    Little Rock, AR 72212
                                                    Tel: (501) 312-8500
                                                    Fax: (501) 312- 8505

Vladimir M. Gorokhovsky
**GOROKHOVSKY LAW OFFICE, LLC**
6045 North Green Bay Avenue, Suite 2A
Glendale, WI  53209
Tel:  (414) 218-1870

BY:  <u>/s/Hank Bates</u>

***Counsel for Plaintiffs and Proposed Class***

# EXHIBIT 1

17.2.2004     EN     Official Journal of the European Union     L 46/1

# I

*(Acts whose publication is obligatory)*

## REGULATION (EC) No 261/2004 OF THE EUROPEAN PARLIAMENT AND OF THE COUNCIL

### of 11 February 2004

**establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91**

**(Text with EEA relevance)**

THE EUROPEAN PARLIAMENT AND THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Article 80(2) thereof,

Having regard to the proposal from the Commission [1],

Having regard to the opinion of the European Economic and Social Committee [2],

After consulting the Committee of the Regions,

Acting in accordance with the procedure laid down in Article 251 of the Treaty [3], in the light of the joint text approved by the Conciliation Committee on 1 December 2003,

Whereas:

(1) Action by the Community in the field of air transport should aim, among other things, at ensuring a high level of protection for passengers. Moreover, full account should be taken of the requirements of consumer protection in general.

(2) Denied boarding and cancellation or long delay of flights cause serious trouble and inconvenience to passengers.

(3) While Council Regulation (EEC) No 295/91 of 4 February 1991 establishing common rules for a denied boarding compensation system in scheduled air transport [4] created basic protection for passengers, the number of passengers denied boarding against their will remains too high, as does that affected by cancellations without prior warning and that affected by long delays.

(4) The Community should therefore raise the standards of protection set by that Regulation both to strengthen the rights of passengers and to ensure that air carriers operate under harmonised conditions in a liberalised market.

(5) Since the distinction between scheduled and non-scheduled air services is weakening, such protection should apply to passengers not only on scheduled but also on non-scheduled flights, including those forming part of package tours.

(6) The protection accorded to passengers departing from an airport located in a Member State should be extended to those leaving an airport located in a third country for one situated in a Member State, when a Community carrier operates the flight.

(7) In order to ensure the effective application of this Regulation, the obligations that it creates should rest with the operating air carrier who performs or intends to perform a flight, whether with owned aircraft, under dry or wet lease, or on any other basis.

(8) This Regulation should not restrict the rights of the operating air carrier to seek compensation from any person, including third parties, in accordance with the law applicable.

(9) The number of passengers denied boarding against their will should be reduced by requiring air carriers to call for volunteers to surrender their reservations, in exchange for benefits, instead of denying passengers boarding, and by fully compensating those finally denied boarding.

[1] OJ C 103 E, 30.4.2002, p. 225 and OJ C 71 E, 25.3.2003, p. 188.
[2] OJ C 241, 7.10.2002, p. 29.
[3] Opinion of the European Parliament of 24 October 2002 (OJ C 300 E, 11.12.2003, p. 443), Council Common Position of 18 March 2003 (OJ C 125 E, 27.5.2003, p. 63) and Position of the European Parliament of 3 July 2003. Legislative Resolution of the European Parliament of 18 December 2003 and Council Decision of 26 January 2004.
[4] OJ L 36, 8.2.1991, p. 5.

(10) Passengers denied boarding against their will should be able either to cancel their flights, with reimbursement of their tickets, or to continue them under satisfactory conditions, and should be adequately cared for while awaiting a later flight.

(11) Volunteers should also be able to cancel their flights, with reimbursement of their tickets, or continue them under satisfactory conditions, since they face difficulties of travel similar to those experienced by passengers denied boarding against their will.

(12) The trouble and inconvenience to passengers caused by cancellation of flights should also be reduced. This should be achieved by inducing carriers to inform passengers of cancellations before the scheduled time of departure and in addition to offer them reasonable re-routing, so that the passengers can make other arrangements. Air carriers should compensate passengers if they fail to do this, except when the cancellation occurs in extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken.

(13) Passengers whose flights are cancelled should be able either to obtain reimbursement of their tickets or to obtain re-routing under satisfactory conditions, and should be adequately cared for while awaiting a later flight.

(14) As under the Montreal Convention, obligations on operating air carriers should be limited or excluded in cases where an event has been caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken. Such circumstances may, in particular, occur in cases of political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating air carrier.

(15) Extraordinary circumstances should be deemed to exist where the impact of an air traffic management decision in relation to a particular aircraft on a particular day gives rise to a long delay, an overnight delay, or the cancellation of one or more flights by that aircraft, even though all reasonable measures had been taken by the air carrier concerned to avoid the delays or cancellations.

(16) In cases where a package tour is cancelled for reasons other than the flight being cancelled, this Regulation should not apply.

(17) Passengers whose flights are delayed for a specified time should be adequately cared for and should be able to cancel their flights with reimbursement of their tickets or to continue them under satisfactory conditions.

(18) Care for passengers awaiting an alternative or a delayed flight may be limited or declined if the provision of the care would itself cause further delay.

(19) Operating air carriers should meet the special needs of persons with reduced mobility and any persons accompanying them.

(20) Passengers should be fully informed of their rights in the event of denied boarding and of cancellation or long delay of flights, so that they can effectively exercise their rights.

(21) Member States should lay down rules on sanctions applicable to infringements of the provisions of this Regulation and ensure that these sanctions are applied. The sanctions should be effective, proportionate and dissuasive.

(22) Member States should ensure and supervise general compliance by their air carriers with this Regulation and designate an appropriate body to carry out such enforcement tasks. The supervision should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law.

(23) The Commission should analyse the application of this Regulation and should assess in particular the opportunity of extending its scope to all passengers having a contract with a tour operator or with a Community carrier, when departing from a third country airport to an airport in a Member State.

(24) Arrangements for greater cooperation over the use of Gibraltar airport were agreed in London on 2 December 1987 by the Kingdom of Spain and the United Kingdom in a joint declaration by the Ministers of Foreign Affairs of the two countries. Such arrangements have yet to enter into operation.

(25) Regulation (EEC) No 295/91 should accordingly be repealed,

HAVE ADOPTED THIS REGULATION:

*Article 1*

**Subject**

1. This Regulation establishes, under the conditions specified herein, minimum rights for passengers when:

(a) they are denied boarding against their will;

(b) their flight is cancelled;

(c) their flight is delayed.

17.2.2004 EN Official Journal of the European Union L 46/3

2. Application of this Regulation to Gibraltar airport is understood to be without prejudice to the respective legal positions of the Kingdom of Spain and the United Kingdom with regard to the dispute over sovereignty over the territory in which the airport is situated.

3. Application of this Regulation to Gibraltar airport shall be suspended until the arrangements in the Joint Declaration made by the Foreign Ministers of the Kingdom of Spain and the United Kingdom on 2 December 1987 enter into operation. The Governments of Spain and the United Kingdom will inform the Council of such date of entry into operation.

*Article 2*

**Definitions**

For the purposes of this Regulation:

(a) 'air carrier' means an air transport undertaking with a valid operating licence;

(b) 'operating air carrier' means an air carrier that performs or intends to perform a flight under a contract with a passenger or on behalf of another person, legal or natural, having a contract with that passenger;

(c) 'Community carrier' means an air carrier with a valid operating licence granted by a Member State in accordance with the provisions of Council Regulation (EEC) No 2407/92 of 23 July 1992 on licensing of air carriers (¹);

(d) 'tour operator' means, with the exception of an air carrier, an organiser within the meaning of Article 2, point 2, of Council Directive 90/314/EEC of 13 June 1990 on package travel, package holidays and package tours (²);

(e) 'package' means those services defined in Article 2, point 1, of Directive 90/314/EEC;

(f) 'ticket' means a valid document giving entitlement to transport, or something equivalent in paperless form, including electronic form, issued or authorised by the air carrier or its authorised agent;

(g) 'reservation' means the fact that the passenger has a ticket, or other proof, which indicates that the reservation has been accepted and registered by the air carrier or tour operator;

(h) 'final destination' means the destination on the ticket presented at the check-in counter or, in the case of directly connecting flights, the destination of the last flight; alternative connecting flights available shall not be taken into account if the original planned arrival time is respected;

(i) 'person with reduced mobility' means any person whose mobility is reduced when using transport because of any physical disability (sensory or locomotory, permanent or temporary), intellectual impairment, age or any other cause of disability, and whose situation needs special attention and adaptation to the person's needs of the services made available to all passengers;

(j) 'denied boarding' means a refusal to carry passengers on a flight, although they have presented themselves for boarding under the conditions laid down in Article 3(2), except where there are reasonable grounds to deny them boarding, such as reasons of health, safety or security, or inadequate travel documentation;

(k) 'volunteer' means a person who has presented himself for boarding under the conditions laid down in Article 3(2) and responds positively to the air carrier's call for passengers prepared to surrender their reservation in exchange for benefits.

(l) 'cancellation' means the non-operation of a flight which was previously planned and on which at least one place was reserved.

*Article 3*

**Scope**

1. This Regulation shall apply:

(a) to passengers departing from an airport located in the territory of a Member State to which the Treaty applies;

(b) to passengers departing from an airport located in a third country to an airport situated in the territory of a Member State to which the Treaty applies, unless they received benefits or compensation and were given assistance in that third country, if the operating air carrier of the flight concerned is a Community carrier.

2. Paragraph 1 shall apply on the condition that passengers:

(a) have a confirmed reservation on the flight concerned and, except in the case of cancellation referred to in Article 5, present themselves for check-in,

— as stipulated and at the time indicated in advance and in writing (including by electronic means) by the air carrier, the tour operator or an authorised travel agent,

or, if no time is indicated,

— not later than 45 minutes before the published departure time; or

(b) have been transferred by an air carrier or tour operator from the flight for which they held a reservation to another flight, irrespective of the reason.

3. This Regulation shall not apply to passengers travelling free of charge or at a reduced fare not available directly or indirectly to the public. However, it shall apply to passengers having tickets issued under a frequent flyer programme or other commercial programme by an air carrier or tour operator.

(¹) OJ L 240, 24.8.1992, p. 1.
(²) OJ L 158, 23.6.1990, p. 59.

L 46/4          EN          Official Journal of the European Union          17.2.2004

4.   This Regulation shall only apply to passengers transported by motorised fixed wing aircraft.

5.   This Regulation shall apply to any operating air carrier providing transport to passengers covered by paragraphs 1 and 2. Where an operating air carrier which has no contract with the passenger performs obligations under this Regulation, it shall be regarded as doing so on behalf of the person having a contract with that passenger.

6.   This Regulation shall not affect the rights of passengers under Directive 90/314/EEC. This Regulation shall not apply in cases where a package tour is cancelled for reasons other than cancellation of the flight.

*Article 4*

**Denied boarding**

1.   When an operating air carrier reasonably expects to deny boarding on a flight, it shall first call for volunteers to surrender their reservations in exchange for benefits under conditions to be agreed between the passenger concerned and the operating air carrier. Volunteers shall be assisted in accordance with Article 8, such assistance being additional to the benefits mentioned in this paragraph.

2.   If an insufficient number of volunteers comes forward to allow the remaining passengers with reservations to board the flight, the operating air carrier may then deny boarding to passengers against their will.

3.   If boarding is denied to passengers against their will, the operating air carrier shall immediately compensate them in accordance with Article 7 and assist them in accordance with Articles 8 and 9.

*Article 5*

**Cancellation**

1.   In case of cancellation of a flight, the passengers concerned shall:

(a) be offered assistance by the operating air carrier in accordance with Article 8; and

(b) be offered assistance by the operating air carrier in accordance with Article 9(1)(a) and 9(2), as well as, in event of re-routing when the reasonably expected time of departure of the new flight is at least the day after the departure as it was planned for the cancelled flight, the assistance specified in Article 9(1)(b) and 9(1)(c); and

(c) have the right to compensation by the operating air carrier in accordance with Article 7, unless:

(i) they are informed of the cancellation at least two weeks before the scheduled time of departure; or

(ii) they are informed of the cancellation between two weeks and seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than two hours before the scheduled time of departure and to reach their final destination less than four hours after the scheduled time of arrival; or

(iii) they are informed of the cancellation less than seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival.

2.   When passengers are informed of the cancellation, an explanation shall be given concerning possible alternative transport.

3.   An operating air carrier shall not be obliged to pay compensation in accordance with Article 7, if it can prove that the cancellation is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken.

4.   The burden of proof concerning the questions as to whether and when the passenger has been informed of the cancellation of the flight shall rest with the operating air carrier.

*Article 6*

**Delay**

1.   When an operating air carrier reasonably expects a flight to be delayed beyond its scheduled time of departure:

(a) for two hours or more in the case of flights of 1 500 kilometres or less; or

(b) for three hours or more in the case of all intra-Community flights of more than 1 500 kilometres and of all other flights between 1 500 and 3 500 kilometres; or

(c) for four hours or more in the case of all flights not falling under (a) or (b),

passengers shall be offered by the operating air carrier:

(i) the assistance specified in Article 9(1)(a) and 9(2); and

(ii) when the reasonably expected time of departure is at least the day after the time of departure previously announced, the assistance specified in Article 9(1)(b) and 9(1)(c); and

(iii) when the delay is at least five hours, the assistance specified in Article 8(1)(a).

2.   In any event, the assistance shall be offered within the time limits set out above with respect to each distance bracket.

17.2.2004     EN     Official Journal of the European Union     L 46/5

*Article 7*

**Right to compensation**

1. Where reference is made to this Article, passengers shall receive compensation amounting to:

(a) EUR 250 for all flights of 1 500 kilometres or less;

(b) EUR 400 for all intra-Community flights of more than 1 500 kilometres, and for all other flights between 1 500 and 3 500 kilometres;

(c) EUR 600 for all flights not falling under (a) or (b).

In determining the distance, the basis shall be the last destination at which the denial of boarding or cancellation will delay the passenger's arrival after the scheduled time.

2. When passengers are offered re-routing to their final destination on an alternative flight pursuant to Article 8, the arrival time of which does not exceed the scheduled arrival time of the flight originally booked

(a) by two hours, in respect of all flights of 1 500 kilometres or less; or

(b) by three hours, in respect of all intra-Community flights of more than 1 500 kilometres and for all other flights between 1 500 and 3 500 kilometres; or

(c) by four hours, in respect of all flights not falling under (a) or (b),

the operating air carrier may reduce the compensation provided for in paragraph 1 by 50 %.

3. The compensation referred to in paragraph 1 shall be paid in cash, by electronic bank transfer, bank orders or bank cheques or, with the signed agreement of the passenger, in travel vouchers and/or other services.

4. The distances given in paragraphs 1 and 2 shall be measured by the great circle route method.

*Article 8*

**Right to reimbursement or re-routing**

1. Where reference is made to this Article, passengers shall be offered the choice between:

(a) — reimbursement within seven days, by the means provided for in Article 7(3), of the full cost of the ticket at the price at which it was bought, for the part or parts of the journey not made, and for the part or parts already made if the flight is no longer serving any purpose in relation to the passenger's original travel plan, together with, when relevant,

— a return flight to the first point of departure, at the earliest opportunity;

(b) re-routing, under comparable transport conditions, to their final destination at the earliest opportunity; or

(c) re-routing, under comparable transport conditions, to their final destination at a later date at the passenger's convenience, subject to availability of seats.

2. Paragraph 1(a) shall also apply to passengers whose flights form part of a package, except for the right to reimbursement where such right arises under Directive 90/314/EEC.

3. When, in the case where a town, city or region is served by several airports, an operating air carrier offers a passenger a flight to an airport alternative to that for which the booking was made, the operating air carrier shall bear the cost of transferring the passenger from that alternative airport either to that for which the booking was made, or to another close-by destination agreed with the passenger.

*Article 9*

**Right to care**

1. Where reference is made to this Article, passengers shall be offered free of charge:

(a) meals and refreshments in a reasonable relation to the waiting time;

(b) hotel accommodation in cases

— where a stay of one or more nights becomes necessary, or

— where a stay additional to that intended by the passenger becomes necessary;

(c) transport between the airport and place of accommodation (hotel or other).

2. In addition, passengers shall be offered free of charge two telephone calls, telex or fax messages, or e-mails.

3. In applying this Article, the operating air carrier shall pay particular attention to the needs of persons with reduced mobility and any persons accompanying them, as well as to the needs of unaccompanied children.

*Article 10*

**Upgrading and downgrading**

1. If an operating air carrier places a passenger in a class higher than that for which the ticket was purchased, it may not request any supplementary payment.

2. If an operating air carrier places a passenger in a class lower than that for which the ticket was purchased, it shall within seven days, by the means provided for in Article 7(3), reimburse

(a) 30 % of the price of the ticket for all flights of 1 500 kilometres or less, or

L 46/6     EN     Official Journal of the European Union     17.2.2004

(b) 50 % of the price of the ticket for all intra-Community flights of more than 1 500 kilometres, except flights between the European territory of the Member States and the French overseas departments, and for all other flights between 1 500 and 3 500 kilometres, or

(c) 75 % of the price of the ticket for all flights not falling under (a) or (b), including flights between the European territory of the Member States and the French overseas departments.

### Article 11

**Persons with reduced mobility or special needs**

1.  Operating air carriers shall give priority to carrying persons with reduced mobility and any persons or certified service dogs accompanying them, as well as unaccompanied children.

2.  In cases of denied boarding, cancellation and delays of any length, persons with reduced mobility and any persons accompanying them, as well as unaccompanied children, shall have the right to care in accordance with Article 9 as soon as possible.

### Article 12

**Further compensation**

1.  This Regulation shall apply without prejudice to a passenger's rights to further compensation. The compensation granted under this Regulation may be deducted from such compensation.

2.  Without prejudice to relevant principles and rules of national law, including case-law, paragraph 1 shall not apply to passengers who have voluntarily surrendered a reservation under Article 4(1).

### Article 13

**Right of redress**

In cases where an operating air carrier pays compensation or meets the other obligations incumbent on it under this Regulation, no provision of this Regulation may be interpreted as restricting its right to seek compensation from any person, including third parties, in accordance with the law applicable. In particular, this Regulation shall in no way restrict the operating air carrier's right to seek reimbursement from a tour operator or another person with whom the operating air carrier has a contract. Similarly, no provision of this Regulation may be interpreted as restricting the right of a tour operator or a third party, other than a passenger, with whom an operating air carrier has a contract, to seek reimbursement or compensation from the operating air carrier in accordance with applicable relevant laws.

### Article 14

**Obligation to inform passengers of their rights**

1.  The operating air carrier shall ensure that at check-in a clearly legible notice containing the following text is displayed in a manner clearly visible to passengers: 'If you are denied boarding or if your flight is cancelled or delayed for at least two hours, ask at the check-in counter or boarding gate for the text stating your rights, particularly with regard to compensation and assistance'.

2.  An operating air carrier denying boarding or cancelling a flight shall provide each passenger affected with a written notice setting out the rules for compensation and assistance in line with this Regulation. It shall also provide each passenger affected by a delay of at least two hours with an equivalent notice. The contact details of the national designated body referred to in Article 16 shall also be given to the passenger in written form.

3.  In respect of blind and visually impaired persons, the provisions of this Article shall be applied using appropriate alternative means.

### Article 15

**Exclusion of waiver**

1.  Obligations vis-à-vis passengers pursuant to this Regulation may not be limited or waived, notably by a derogation or restrictive clause in the contract of carriage.

2.  If, nevertheless, such a derogation or restrictive clause is applied in respect of a passenger, or if the passenger is not correctly informed of his rights and for that reason has accepted compensation which is inferior to that provided for in this Regulation, the passenger shall still be entitled to take the necessary proceedings before the competent courts or bodies in order to obtain additional compensation.

### Article 16

**Infringements**

1.  Each Member State shall designate a body responsible for the enforcement of this Regulation as regards flights from airports situated on its territory and flights from a third country to such airports. Where appropriate, this body shall take the measures necessary to ensure that the rights of passengers are respected. The Member States shall inform the Commission of the body that has been designated in accordance with this paragraph.

2. Without prejudice to Article 12, each passenger may complain to any body designated under paragraph 1, or to any other competent body designated by a Member State, about an alleged infringement of this Regulation at any airport situated on the territory of a Member State or concerning any flight from a third country to an airport situated on that territory.

3. The sanctions laid down by Member States for infringements of this Regulation shall be effective, proportionate and dissuasive.

### Article 17

### Report

The Commission shall report to the European Parliament and the Council by 1 January 2007 on the operation and the results of this Regulation, in particular regarding:

— the incidence of denied boarding and of cancellation of flights,

— the possible extension of the scope of this Regulation to passengers having a contract with a Community carrier or holding a flight reservation which forms part of a 'package tour' to which Directive 90/314/EEC applies and who depart from a third-country airport to an airport in a Member State, on flights not operated by Community air carriers,

— the possible revision of the amounts of compensation referred to in Article 7(1).

The report shall be accompanied where necessary by legislative proposals.

### Article 18

### Repeal

Regulation (EEC) No 295/91 shall be repealed.

### Article 19

### Entry into force

This Regulation shall enter into force on 17 February 2005.

This Regulation shall be binding in its entirety and directly applicable in all Member States.

Done at Strasbourg, 11 February 2004.

| For the European Parliament | For the Council |
| --- | --- |
| The President | The President |
| P. COX | M. McDOWELL |

_____

# EXHIBIT 2



**CONDITIONS OF CONTRACT**

1. As used in this contract, "ticket" means "passenger ticket and baggage check", of that they are part the "conditions of contract" and the notices; "contractual carrier" means every air carrier who transports or promises to transport the passenger and his baggage hereunder or who realizes any other service related to the above mentioned air transport; "de facto carrier" means every carrier who realizes any quite or departs from the transport hired with the carrier contractual and authorized by this one; "electronic ticket" means the Itinerary / receipt expressed for or on behalf of the contractual carrier, the Electronic Coupons and, if applicable, a boarding document." Montreal Convention" means the Convention for the unification of certain rules for the International Air Transport signed at Montreal, May 28th, 1999. Regulation EC 2027/97 means the Regulation EC 2027/97 of the Council of 9 October 1997, modified by Regulation EC No. 889/2002 May 13th, on air carrier liability in respect of the carriage of passengers and their baggage by air. "SDR" means a Special Drawing Right as defined by the International Monetary Fund.

2. Carriage hereunder is subject to the rules and limits of liability established by the Montreal Convention and Council Regulation (EC) No. 2027/97 of 9th October 1997 modified by EC Regulation No. 889/2002 May 13th on air carrier liability in respect of the carriage of passengers and their baggage by air.

3. Meanwhile if it is not in contradiction with the previous, any realized transport and other services performed by the carrier will be subject to: 1.-provisions contained in this ticket; 2.- applicable tariffs and its conditions; 3.- carrier's conditions of carriage and related regulations which are made part hereof (and are available on application at the offices of the carrier).

4. Contractual Carrier name may be abbreviated in the ticket, whenever the full name and his abbreviation appear in the manuals, regulations and timetables of the carrier; contractual carrier's address appears on the back of the "passenger ticket"; the agreed stopping places are those places set forth in this ticket or as shown in carrier's timetables as scheduled stopping places on the passenger's route; carriage to be performed hereunder by several successive carriers is regarded as a single operation.

5. An air carrier issuing a ticket for carriage over the lines of another air carrier does so only as its Agent.

6. Any exclusion or limitation of liability of the contractual carrier shall apply to and be for the benefit of agents, employees and representatives of the contractual carrier, when exercising their functions.

7. Checked baggage will be delivered to bearer of the baggage check. In case of damaged checked baggage, a complaint must be made by the passenger in writing to the carrier as soon as possible after the discovery of the damage and, at the latest, within 7 days from receipt; in case of delay, complaint must be made within 21 days, always referred to natural or calendar days, in both cases from the date the baggage was delivered.

8. This ticket is good for carriage for one year from the date of issue, except as otherwise provided in this ticket, in carrier's tariffs, conditions of carriage, or related regulations. Carrier may refuse transportation if the applicable fare has not been paid.

9. Carrier undertakes to use its best efforts to carry the passenger and his baggage with reasonable dispatch. Carrier may substitute alternate carriers on aircraft, and may omit stopping places shown on the ticket in case of necessity. Carrier, unless otherwise provided in this ticket, assumes no responsibility for making connections at the destination.

10. Passenger shall comply with Government travel requirements and have the documents of exit, entry and others demanded, as well as come to the airport at the hour fixed by the carrier in the notice "CHECK-IN LIMIT TIME".

11. No agent, employee or representative of the carrier has authority to alter, modify or waive any conditions of this contract.

**NOTICE TO PASSENGERS IN THE EVENT OF DENIED BOARDING**
As established in the European Parliament and Council Regulation (EC) No. 261/2004 of 11th February, in the event of denied boarding to passengers although they have presented themselves for boarding under the conditions established in this Regulation, compensation is fixed and the carrier is liable for the provision of immediate aid and assistance to affected passengers.

**NOTICE TO PASSENGERS IN THE EVENT OF CANCELLATION**
As established in the European Parliament and Council Regulation (EC) No. 261/2004 of 11th February, compensation is fixed in the event of flight cancellation unless the latter is due to extraordinary circumstances. The carrier is furthermore liable for the provision of immediate aid and assistance to affected passengers.

**NOTICE TO PASSENGERS IN THE EVENT OF DELAY**
As established in the European Parliament and Council Regulation (EC) No. 261/2004 of 11th February, in the event of a long delay in relation to the scheduled departure time of flight, passengers are entitled to immediate aid and assistance throughout the duration of the delay.

**NOTICE OF GOVERNMENT IMPOSED TAXES, FEES AND CHARGES**
The price of this ticket may include taxes, fees and charges which are imposed on air transportation by government authorities. These taxes, fees and charges, which may represent a significant portion of the cost of air travel, are either included in the fare, or shown separately in the "TAX, FEE/CHARGE" box(es) of this ticket. You may also be required to pay taxes, fees and charges not already collected.

**NOTICE REGARDING IDENTITY OF THE OPERATING CARRIER**
As established in article 11 of European Parliament and Council Regulation CE No 2111/2005 of December 14th, 2005, the air carriage contractor shall inform the passenger of the identity of the operating air carrier. Where the identity of the operating air carrier is not yet known at the time of reservation, the air carriage contractor shall ensure that the passenger is informed of the identity of the operating air carrier as soon as such identity is established.

**NOTICE REGARDING THE LIMITATION OF LIABILITY OF AIRLINE COMPANIES WITH REGARD TO PASSENGERS AND BAGGAGE**
This informative notice transcribes the ANNEX contained in the European Council Regulation EC Nº 2027/97, modified by Regulation EC No 889/2002, which summarises the liability rules applied by Community air carriers as required by Community legislation and the Montreal Convention.

**Compensation in the case of death or injury**:  There are no financial limits to the liability for passenger injury or death. For damages up to 113 100 SDRs (approximate amount in local currency) the air carrier cannot contest claims for compensation. Above that amount, the air carrier can defend itself against a claim by proving that it was not negligent or otherwise at fault. Advance payments: If a passenger is killed or injured, the air carrier must make an advance payment, to cover immediate economic needs, within 15 days from the identification of the person entitled to compensation. In the event of death, this advance payment shall not be less than 16 000 SDRs (approximate amount in local currency).

**Passenger delays**: In case of passenger delay, the air carrier is liable for damage unless it took all reasonable measures to avoid the damage or it was impossible to take such measures. The liability for passenger delay is limited to 4 694 SDRs (approximate amount in local currency). **(\*)**

**Baggage delays**: In case of baggage delay, the air carrier is liable for damage unless it took all reasonable measures to avoid the damage or it was impossible to take such measures. The liability for baggage delay is limited to 1 131 SDRs (approximate amount in local currency). **(\*)**

**Destruction, loss or damage to baggage**: The air carrier is liable for destruction, loss or damage to baggage up to 1 131 SDRs (approximate amount in local currency). In the case of checked baggage, it is liable even if not at fault, unless the baggage was defective. In the case of unchecked baggage, the carrier is liable only if at fault.

**Higher limits for baggage**: A passenger can benefit from a higher liability limit by making a special declaration at the latest at check-in and by paying a supplementary fee.

**Complaints on baggage**: If the baggage is damaged, delayed, lost or destroyed, the passenger must write and complain to the air carrier as soon as possible. In the case of damage to checked baggage, the passenger must write and complain within seven days, and in the case of delay within 21 days, in both cases from the date on which the baggage was placed at the passenger's disposal.

**Liability of contracting and actual carriers**: If the air carrier actually performing the flight is not the same as the contracting air carrier, the passenger has the right to address a complaint or to make a claim for damages against either. If the name or code of an air carrier is indicated on the ticket, that air carrier is the contracting air carrier.

**Time limit for action**: Any action in court to claim damages must be brought within two years from the date of arrival of the aircraft, or from the date on which the aircraft ought to have arrived.

**Basis for the information**: The basis for the rules described above is the Montreal Convention of 28 May 1999, which is implemented in the Community by Regulation (EC) No 2027/97 (as amended by Regulation (EC) No 889/2002) and national legislation of the Member States.

**(*) This deals with an individual passenger's right to initiate judicial proceedings with a view to obtaining compensation for any damages resulting from a delay. Evidence of such damage and the air carrier's liability for this must be provided.**


**DANGEROUS ARTICLES IN BAGGAGE**

For safety reasons, dangerous articles such as those listed below, must not be carried in passenger's baggage: compressed gases, corrosives, explosives, flammable liquids and solids, radioactive materials, oxidising materials, poisons, infectious substances, and brief-cases and attaché cases with installed alarm devices.


NOTICE OF SEAT CANCELLATION.- In the event you already have your seat reserved and for any reason you do not intend using your reservation, kindly cancel it by phone, personally or through your Agent. By doing so, you will cede space to another passenger and also avoid any cancellation charge.
ON ARRIVAL AT TRANSIT POINTS.- Passenger are requested to check on arrival their reservation for their next stretch or for the return trip. Also please give any temporary address for any possible information from the carrier.


CHECK-IN TIME LIMIT.- Check in time limit means the latest time prior to the scheduled departure time, as shown on the flight coupon, by which the passenger must be accepted for the flight, have their baggage checked and obtain their boarding pass. After this time limit, the flight will be closed. Carrier will not be liable for the non acceptance of a passenger reporting for a flight already closed.



CONDICIONES DEL CONTRATO

1. A los efectos de este contrato, "billete" significa "billete de pasaje y talón de equipaje", del que forman parte las presentes "condiciones del contrato y los avisos. "Billete electrónico" significa el Itinerario/Recibo emitido por o en nombre del transportista contractual, los cupones electrónicos, y en su caso, un documento de embarque. "Transportista contractual" significa todo transportista aéreo que transporte o se comprometa a transportar al pasajero y a su equipaje en virtud de este contrato o que realice cualquier otro servicio relacionado con dicho transporte aéreo; "Transportista de Hecho" significa todo otro transportista que realice todo o parte del transporte contratado con el transportista contractual y autorizado por éste. "Convenio de Montreal" significa el Convenio para la Unificación de ciertas Reglas para el Transporte Aéreo Internacional, firmado en Montreal el 28 de Mayo de 1999. "Reglamento (CE) Nº 2027/97 del Consejo de 9 de Octubre de 1997, modificado por el Reglamento (CE) Nº 889/2002 de 13 de mayo de 2002, relativo a la responsabilidad de las compañías aéreas comunitarias respecto al transporte de pasajeros y su equipaje. "DEG" significa los Derechos Especiales de Giro según su definición por el Fondo Monetario Internacional.

2. El transporte realizado en virtud del presente contrato, en lo que respecta a la responsabilidad del transportista, está sujeto, al Convenio de Montreal y a lo dispuesto en el Reglamento (CE) Nº 2027/97 del Consejo de 9 de Octubre de 1997, modificado por el Reglamento (CE) Nº 889/2002 de 13 de mayo de 2002, relativo a la responsabilidad de las compañías aéreas respecto al transporte de los pasajeros y su equipaje.

3. En tanto no se halle en contradicción con lo anterior, todo transporte realizado y demás servicios prestados por el transportista estarán sometidos a: 1) las condiciones que figuran en este billete; 2) la tarifa aplicada y sus condiciones; 3) las demás condiciones de transporte establecidas por el transportista y las reglamentaciones conexas que forman parte del presente contrato y que pueden ser consultadas en las oficinas del transportista.

4. El nombre del transportista contractual puede aparecer abreviado en el billete, siempre que el nombre completo y su abreviatura figuren en los manuales, reglamentaciones y horarios del transportista; la dirección del transportista contractual es la que figura al dorso del "billete de pasaje"; las escalas convenidas son aquellos puntos que se indican en el "billete de pasaje" o que figuran en los horarios del transportista como escalas previstas en el itinerario del pasajero; el transporte a realizar en virtud de este contrato por varios transportistas sucesivos se considerará como una sola operación.

5. El transportista que emite un billete para las líneas de otro transportista, actúa sólo como agente de este último.

6. Cualquier limitación de responsabilidad del transportista contractual se aplicará y beneficiará a sus agentes, empleados y representantes, así como al transportista de hecho, a sus dependientes y agentes, cuando actúen en el ejercicio de sus funciones.

7. El equipaje facturado será entregado al portador del talón de equipaje. Si el equipaje facturado resultara dañado, el pasajero deberá presentar por escrito la oportuna protesta al transportista lo antes posible o, a lo sumo, en el plazo de siete (7) días y en caso de retraso en el plazo de veintiún (21) días, siempre referidos a días naturales o de calendario, a partir, en ambos casos de ser puesto el equipaje a disposición del pasajero.

8. Este billete es válido para el transporte durante un año desde la fecha de emisión, a menos que se estipule otra cosa en el mismo, o en las tarifas aplicables y sus condiciones. El transportista puede negarse a efectuar el transporte si la tarifa aplicable no ha sido pagada.

9. El transportista se compromete a esforzarse todo lo posible para transportar al pasajero y a su equipaje con diligencia razonable. En caso de necesidad el transportista puede hacerse sustituir por otro transportista, utilizar aviones de terceros y modificar o suprimir escalas

previstas en el billete. El transportista, salvo que otra cosa se indique en el billete, no asume la responsabilidad de garantizar los enlaces con otro vuelo en el punto de destino.

10. El pasajero deberá cumplir los requisitos gubernamentales establecidos para la realización del viaje y disponer de los documentos de salida, entrada y demás exigidos, así como llegar al aeropuerto a la hora señalada por el transportista en el aviso HORA LÍMITE DE ACEPTACIÓN AL VUELO.

11. Ningún agente, empleado o representante del transportista tiene autoridad para alterar, modificar o renunciar a cualquiera de las condiciones de este contrato.

**AVISO A LOS PASAJEROS DENEGADOS AL EMBARQUE**
Conforme a lo dispuesto en el Reglamento (CE) Nº 261/2004 del Parlamento Europeo y del Consejo, en caso de denegación de embarque a un pasajero que se haya presentado al embarque en las condiciones establecidas por el Reglamento, se establece una compensación, y el transportista deberá ofrecer atención y asistencia inmediata al pasajero.

**AVISO A LOS PASAJEROS POR CANCELACION**
Conforme a lo dispuesto en el Reglamento (CE) Nº 261/2004 del Parlamento Europeo y del Consejo, en caso de cancelación de un vuelo se establece una compensación, salvo que la cancelación sea debida a circunstancias extraordinarias, y obliga al transportista a ofrecer atención y asistencia inmediata a los pasajeros afectados.

**AVISO A LOS PASAJEROS POR RETRASO**
Conforme a lo dispuesto en el Reglamento (CE) Nº 261/2004 del Parlamento Europeo y del Consejo, en caso de gran retraso de un vuelo respecto a la hora de salida prevista, el pasajero tiene derecho a recibir atención y asistencia inmediata durante el retraso.

**AVISO A LOS PASAJEROS SOBRE IMPUESTOS Y TASAS GUBERNAMENTALES**
El precio de este billete puede incluir impuestos y tasas que han sido establecidos sobre el transporte aéreo por autoridades gubernamentales. Estos impuestos, tasas que pueden configurar una porción significativa del coste del transporte aéreo, pueden estar incluidos en la tarifa o discriminados en la casilla "IMPUESTOS" del billete. También se podrá requerir del pasajero que abone tasas o impuestos que no hayan sido cobrados con anterioridad.

**AVISO SOBRE LA IDENTIDAD DE LA COMPAÑÍA AÉREA OPERADORA**
Conforme a lo dispuesto en el artículo 11 del Reglamento (CE) Nº 2111/2005, del Parlamento Europeo y del Consejo, de 14 de diciembre de 2005, el transportista contractual informará al pasajero de la identidad de la Compañía que vaya a operar el vuelo. Si en el momento de realizar la reserva no se conociera la identidad de la compañía operadora, el transportista contractual velará para que se informe al pasajero tan pronto como se conozca la identidad de la misma.

**AVISO SOBRE LIMITACIÓN DE RESPONSABILIDAD DE LAS COMPAÑIAS AÉREAS EN RELACIÓN CON LOS PASAJEROS Y SU EQUIPAJE**
Este aviso informativo transcribe el ANEXO contenido en el Reglamento (CE) Nº 2027/97 del Consejo, modificado por el Reglamento (CE) Nº 889/2002, que resume las normas en materia de responsabilidad aplicadas por las compañías aéreas comunitarias, de conformidad con la legislación comunitaria y el Convenio de Montreal.

**Indemnización en caso de muerte o lesión**: no hay límite económico fijado para la responsabilidad en caso de lesiones o muerte del pasajero. Para los daños de hasta 113.100 DEG (cantidad aproximada en divisa local), la compañía aérea no podrá impugnar las reclamaciones de indemnización. Por encima de dicha cantidad, la compañía aérea sólo puede

impugnar una reclamación en caso de que pueda probar que no hubo de su parte negligencia ni falta de otro tipo.

**Anticipos**: en caso de muerte o lesión de un pasajero, la compañía aérea deberá abonar, en el plazo de quince días desde el día de la identificación de la persona con derecho a la indemnización, un anticipo para cubrir las necesidades económicas inmediatas. En caso de fallecimiento, este anticipo no podrá ser inferior a 16.000DEG (importe aproximado en divisa local).

**Retraso del pasajero**: en caso de que el vuelo contratado por el pasajero sufriera un retraso, la compañía aérea es responsable del daño siempre que no haya tomado todas las medidas razonables para evitar el daño o le haya sido imposible tomar dichas medidas. La responsabilidad en caso de retraso del pasajero se limita a 4.694 DEG (importe aproximado en divisa local) **(\*)**.

**Retraso del equipaje**: en caso de retraso del equipaje, la compañía aérea es responsable del daño siempre que no haya tomado todas las medidas razonables para evitar el daño o le haya sido imposible tomar dichas medidas. La responsabilidad se limita a 1.131 DEG (importe aproximado en divisa local) **(\*)**.

**Destrucción, pérdida o daños del equipaje**: la compañía aérea es responsable en caso de destrucción, pérdida o daños del equipaje hasta la cantidad de 1.131 DEG (importe aproximado en divisa local). Con respecto al equipaje facturado, es responsable aún cuando esté exento de culpa, salvo que el equipaje ya estuviese dañado. Con respecto al equipaje no facturado, la compañía aérea sólo es responsable de los daños causados por su culpa.

**Límites más elevados para el equipaje**: el pasajero puede acogerse a un límite de responsabilidad más elevado efectuando una declaración especial, previa la facturación, abonando una tarifa suplementaria.

**Reclamaciones sobre el equipaje**: si el equipaje facturado ha sido dañado, retrasado, perdido o destruido, el pasajero debe señalarlo por escrito a la compañía aérea lo antes posible. Si el equipaje dañado es equipaje facturado, el pasajero lo señalará por escrito en el plazo de siete días, y en caso de retraso, de veintiún días, en ambos casos a partir del día en el que el equipaje se puso a disposición del pasajero.

**Responsabilidad de la compañía con la que se ha contratado el servicio y de la compañía encargada de la prestación efectiva**: si la compañía aérea encargada del vuelo no es la misma que la compañía aérea contratante, el pasajero podrá formular una queja o una reclamación a cualquiera de ellas. Si en el billete consta el nombre o código de una compañía aérea, esa es la compañía aérea contratante.

**Plazos de reclamación**: toda reclamación ante un tribunal deberá presentarse en el plazo de dos años a partir de la llegada de la aeronave o del día en que la aeronave hubiese debido llegar.

**Fundamento de la información**: las normas arriba descritas se fundamentan en el Convenio de Montreal del 28 de mayo de 1999, desarrollado en la Comunidad por el Reglamento (CE) Nº 2027/97 [modificado por el Reglamento (CE) Nº 889/2002] y por la legislación nacional de los Estados miembros.

**(\*) Se trata del derecho del pasajero individual de iniciar una acción ante un tribunal para solicitar una indemnización de los daños causados por un retraso, siendo necesario demostrar que se han ocasionado tales daños y que el transportista aéreo es responsable.**

## ARTÍCULOS PELIGROSOS EN VIAJE

Por razones de seguridad en el equipaje del pasajero no debe contener artículos peligrosos, tales como:
Gases comprimidos, corrosivos, explosivos, líquidos y sólidos inflamables, materiales radioactivos, materiales oxidantes, venenos, substancias infecciosas y maletines con equipos de alarma incorporados.

AVISO SOBRE CANCELACIÓN DE PLAZAS.- Caso de tener su plaza debidamente reservada y por alguna circunstancia no pudiera hacer uso de ella, le rogamos que, bien por teléfono, personalmente o a través de su Agente, proceda a la cancelación de la misma. Con ello facilitará el viaje a otro pasajero evitando que la plaza salga vacía así como la posible penalización por no cancelar a tiempo su reserva.

A LA LLEGADA A LOS PUNTOS DE TRÁNSITO.- Se ruega a los señores pasajeros que a la llegada comprueben las reservas de su próxima escala, o del viaje de regreso, y comuniquen su dirección temporal al transportista a fin de ser advertidos de cualquier información que pudiera interesarles.

HORA LÍMITE DE ACEPTACIÓN AL VUELO.- La hora límite de aceptación al vuelo es el tiempo mínimo de antelación a la hora oficial programada de salida del vuelo indicada en el cupón, en el cual el pasajero debe haber sido admitido al vuelo, tener facturado su equipaje y estar en posesión de la tarjeta de embarque. Pasado este tiempo límite, el vuelo quedará cerrado. El transportista no incurre en responsabilidad alguna por la no aceptación del pasajero cuando éste se presente a un vuelo ya cerrado.