**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THEODOROS GIANNOPOULOS, and ALEXANDRA GIANNOPOULOS, on behalf of themselves and all others similarly situated, ) ) ) ) ) Plaintiffs, ) ) v. ) ) IBERIA LÍNEAS AÉREAS DE ESPAÑA, S.A., ) ) Defendant. ) | No. 11 C 775 Hon. Joan H. Lefkow |

## OPINION AND ORDER

Theodoros and Alexandra Giannopoulos filed this putative class action lawsuit against Iberia Líneas Aéreas de España, S.A.[1] ("Iberia") alleging breach of contract based on Iberia's failure to pay compensation for their delayed flight as required by Iberia's conditions of contract and Regulation No. 261/2004 of the European Parliament and European Council ("EU 261").[2] Four other cases founded on similar allegations have been filed in this district by the same plaintiffs' counsel against other airlines. *See Polinovsky* v. *British Airways PLC*, No. 11 C 779; *Polinovsky* v. *Deutsche Lufthansa AG*, No. 11 C 780; *Volodarskiy* v. *Delta Air Lines, Inc.*, No. 11 C 782; *Gurevich* v. *Compagnia Aereas Italiana, SPA*, No. 11 C 1890. Iberia has moved to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion [#29] is denied.

---

[1] Plaintiffs have incorrectly identified the defendant's proper corporate name, which should be Iberia, Líneas Aéreas de España, S.A. Operadora, Sociedad Unipersonal.

[2] Jurisdiction is founded on the Class Action Fairness Act, 28 U.S.C. § 1332(d).

**BACKGROUND**[3]

Plaintiffs, Illinois residents, purchased tickets to fly on Iberia to Europe. The tickets incorporated Iberia's conditions of contract. The conditions of contract include a notice to passengers that "[a]s established in [EU 261], compensation is fixed in the event of a flight cancellation unless the latter is due to extraordinary circumstances." Ex. 2 to Compl. at 2. They also provide that "[a]s established in [EU 261], in the event of a long delay in relation to the scheduled departure time of flight, passengers are entitled to immediate aid and assistance throughout the duration of the delay." *Id.* EU 261 applies to passengers with confirmed tickets on flights departing from an airport located in an EU member state and flights departing from a non-EU member state to an airport in an EU member state if the operating carrier has an operating license granted by an EU member state.[4] Pursuant to EU 261, passengers on qualifying flights that are cancelled are entitled to a set amount of compensation so long as the cancellation was not caused by unavoidable extraordinary circumstances.[5] This compensation is separate from any other right a passenger may have to compensation. Although EU 261 does not explicitly provide compensation for passengers whose flights are delayed, the European Court of Justice ("ECJ") has interpreted EU 261 to require treating passengers whose flights are delayed

---

[3] The facts recounted in this section are taken from the complaint and are presumed true for purposes of resolving the pending motion.

[4] Iberia has such a license, granted by Spain.

[5] Passengers are also not entitled to compensation if they are informed of the cancellation (1) at least two weeks prior to the scheduled departure time, (2) between two weeks and seven days before the scheduled departure time and are offered rerouting allowing them to depart no more than two hours before the scheduled departure time and to arrive at their final destination no more than four hours after the scheduled arrival time, or (3) within seven days of the scheduled departure time and are offered rerouting allowing them to depart no more than one hour before the scheduled departure time and to arrive at their final destination no more than two hours after the scheduled arrival time.

by three or more hours as passengers whose flights are cancelled for purposes of its compensation provision. Cases C-402/07 & C-432/07, *Sturgeon* v. *Condor Flugdienst GmbH*, 2009 E.C.R. I-10923.

Plaintiffs were scheduled to depart on Iberia Flight 6274 on May 9, 2010 from O'Hare International Airport in Chicago, Illinois to Madrid-Barajas Airport in Madrid, Spain. From Madrid, they were to continue to their final destination of Athens, Greece. Flight 6274 was delayed for more than three hours, arriving in Madrid more than three hours after the scheduled arrival time. Plaintiffs were informed of the delay only after their flight was scheduled to depart. They were rerouted through Vienna, Austria, where they were required to stay overnight. They ultimately reached Athens approximately twenty-four hours after their original scheduled arrival time. Plaintiffs filed a complaint seeking compensation through Iberia's website but only received a form email response from Iberia denying their request and indicating that compensation is only available in cases of overbooking.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences in the plaintiff's favor. *Nixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also*

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

I.   **Airline Deregulation Act**

Iberia first argues that plaintiffs' claim is preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713. The ADA was enacted to promote "maximum reliance on competitive market forces." *Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992). To ensure that states do not undo federal deregulation of the airline industry, the ADA includes a preemption provision providing that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). Thus, for a claim to be preempted, "(1) [a] state must 'enact or enforce' a law that (2) 'relates to' airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Travel All Over the World, Inc.* v. *Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996). State common law qualifies as a provision having the force and effect of law for purposes of the first prong of the preemption analysis. *United Airlines, Inc.* v. *Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000). By not

4

addressing it in their response, plaintiffs apparently concede that the second requirement is met.[6]

The Supreme Court carved out an exception to ADA preemption for certain breach of contract claims. In *American Airlines, Inc.* v. *Wolens*, 513 U.S. 219, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995), the Supreme Court held that the ADA does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 228. Adjudication of the claim must not require "enlargement or enhancement [of the contract] based on state laws or policies external to the agreement." *Id.* at 233; *see also Onoh* v. *Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2000). Thus, for example, the portion of a contract claim seeking punitive damages as allowed by state law would be preempted, while that seeking compensatories would not be. *Travel All*, 73 F.3d at 1432 n.8; *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 317 (E.D.N.Y. 2005). As *Wolens* explains, "[a] remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services." *Wolens*, 513 U.S. at 229.

Plaintiffs argue that Iberia voluntarily agreed to abide by EU 261 by incorporating it into the conditions of contract. Their claim, they posit, is therefore based on a self-imposed undertaking and fits within the *Wolens* exception. Iberia disputes that *Wolens* applies, arguing that the exception is a narrow one and that adjudicating plaintiffs' claim will require going beyond the contract. This contention is based on the fact that the ECJ has found that, for purposes of compensation under EU 261, a flight delay of over three hours is considered

---

[6] In response to a similar motion to dismiss filed in *Volodarskiy*, plaintiffs there, represented by the same counsel as in this case, agree that their breach of contract claim relates to airline rates, routes, or services. *See* No. 11 C 782, Dkt. No. 32 at 12 n.4.

equivalent to a cancellation. Iberia argues that it only agreed in its contract to provide compensation for cancelled flights, so plaintiffs' claim for compensation for a long delay enlarges Iberia's contractual undertaking. Iberia's argument is unpersuasive, however, for it agreed to pay compensation *as established in EU 261*. The ECJ has determined that EU 261 establishes a right to compensation in plaintiffs' case, provided that extraordinary circumstances for the delay cannot be shown. This decision is the binding interpretation of EU 261. *See* Case 69/85, *Wünsche Handelsgesellschaft GmbH & Co.* v. *Germany*, 1986 E.C.R. 947, ¶ 13 ("[A] judgment in which the court gives a preliminary ruling on the interpretation or validity of an act of a community institution conclusively determines a question or questions of community law . . . ."); Stephen Breyer, *Changing Relationships Among European Constitutional Courts*, 21 Cardozo L. Rev. 1045, 1051 (2000) ("[T]he ECJ has final legal authority to interpret an EC law that is binding and 'supreme.'"). Thus, Iberia's agreement to pay compensation according to EU 261 must be read as an agreement to abide by EU 261, as interpreted by the ECJ. The ECJ's decision in *Sturgeon*, then, cannot be considered external to the contract.

The cases Iberia cites to support its position that paying compensation for delays is not a self-imposed undertaking are distinguishable. In *Onoh*, the Fifth Circuit concluded that the airline had not expressly incorporated the Schengen Agreements into its contract by mere reference to the need to comply with all applicable law. *Onoh*, 613 F.3d at 600–01. In *McMullen* v. *Delta Air Lines, Inc.*, the airline similarly only agreed to comply with any applicable law that is in conflict with its international contract of carriage, leading the district court to find that the airline did not voluntarily undertake to only charge non-exempt customers a foreign tax. No. 08-1523 JSW, 2008 WL 4449587, at *5 (N.D. Cal. Sept. 30, 2008), *aff'd*,

6

361 F. App'x 757 (9th Cir. 2010). *But see In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 565–66 (N.D. Tex. 2005) (breach of contract claim not preempted where laws plaintiffs relied on were considered to be incorporated into contract by reference that airline would be "bound to its privacy policy, except as required by law"). In *Buck* v. *American Airlines, Inc.*, the First Circuit concluded that the *Wolens* exception did not apply because the federal regulation plaintiffs sought to enforce was not explicitly incorporated into the contract and considering it to be an implicit term incorporated into every contract would undermine the implied right of action doctrine. 476 F.3d 29, 36–37 (1st Cir. 2007). Unlike generic references to "applicable law" or arguments that certain federal regulations are implicitly part of every contract, in this case, Iberia specifically refers to complying with EU 261 in its conditions of contract. In *Delta Air Lines, Inc.* v. *Black*, the Texas Supreme Court held plaintiffs' claim preempted where plaintiffs sought a remedy that was not allowed by federal regulations that were specifically incorporated into the airline's contract. 116 S.W.3d 745, 755–56 (Tex. 2003). But the federal regulations were considered to be self-imposed obligations, the problem being instead that plaintiffs sought to modify the contract and pursue a right external to its terms. Here, by contrast, plaintiffs seek to enforce a right provided by EU 261, despite Iberia's argument that *Sturgeon* was wrongly decided. If the ECJ had not interpreted EU 261 to allow for compensation in cases of delays of more than three hours, the outcome would be different, but, as it stands, plaintiffs' claim fits within the *Wolens* exception.[7]

---

[7] It is possible that the ADA should be read only to preempt claims that involve consideration of domestic, as opposed to foreign, laws and policies related to airline prices, routes, and services. Having concluded that Iberia expressly incorporated EU 261 into its contract, transforming a government regulation into a self-imposed obligation, the court need not delve further into the language, structure, and purpose of the ADA to determine if it reaches actions involving foreign law or international agreements.

7

## II. Montreal Convention

Iberia next argues that plaintiffs' claim is preempted by the Montreal Convention. *See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, 2242 U.N.T.S. 350. The Montreal Convention was adopted in 1999 and came into force in the United States in November 2003. It replaced the Warsaw Convention, which was signed in 1929 and was intended to "achieve uniformity of rules governing claims arising from international air transportation." *El Al Israel Airlines* v. *Tseng*, 525 U.S. 155, 169, 119 S. Ct. 662, 142 L. Ed. 2d 576 (1999) (quoting *Eastern Airlines, Inc.* v. *Floyd*, 499 U.S. 530, 552, 111 S. Ct. 1489, 113 L. Ed. 2d 569 (1990)). While the Montreal Convention retains the Warsaw Convention's focus on "limit[ing] air carriers' potential liability in the event of an accident," *Sompo Japan Ins., Inc.* v. *Nippon Cargo Airlines Co.*, 522 F.3d 776, 779 (7th Cir. 2008), it also "shows increased concern for the rights of passengers." *Weiss* v. *El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361, 365 (S.D.N.Y. 2006).

The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention art. 1. Article 29, upon which Iberia bases its preemption argument, provides:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under the Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.

*Id.* art. 29. As relevant here, article 19 provides that an air carrier is liable for damage caused by delay unless it can prove that it "took all measures that could reasonably be required to avoid the

8

damage or that it was impossible for it . . . to take such measures." *Id.* art. 19. These provisions of the Montreal Convention are substantially similar to those of the Warsaw Convention, leading courts to look to cases interpreting the latter in determining the Montreal Convention's preemptive effect. *See Narkiewicz-Laine* v. *Scandinavian Airlines Sys.*, 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008); *Paradis* v. *Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004).

The Warsaw Convention preempts state law causes of action to the extent that they conflict with it. *El Al*, 525 U.S. at 175 ("[T]he Convention's preemptive effect is clear: The treaty precludes passengers from bringing action under local law when they cannot establish air carrier liability under the treaty."). Courts are divided as to whether this means that a contract or tort claim falling within the Convention's scope may proceed under state law or must be brought exclusively under the Convention. *Compare Husmann* v. *Trans World Airlines, Inc.*, 169 F.3d 1151, 1152–53 (8th Cir. 1999) (Warsaw Convention completely preempts state tort claim), *with Nankin* v. *Cont'l Airlines, Inc.*, No. CV 09-07851 MMM (RZx), 2010 WL 342632, at *6 (C.D. Cal. Jan. 29, 2010) (the Montreal Convention does not preempt state law causes of action but instead "controls the remedies available and liabilities that can be imposed via those causes of action"). The answer in the Seventh Circuit is clear: the Warsaw Convention is not the exclusive ground for recovery, and state tort and contract claims, consistent with the Convention, may be brought as well. *Sompo*, 522 F.3d at 785 ("Article 24 expressly contemplates that an action may be brought in contract or in tort."). There is no reason why this would change under the Montreal Convention, for article 29 retains the Warsaw Convention's language from article 24 that claims may be brought "under the Convention or in contract or in tort or otherwise." *See Cosgrove-Goodman* v. *UAL Corp.*, No. 10-cv-1908, 2010 WL 2197674, at *3 (N.D. Ill. June 2,

9

2010) ("[T]he Montreal Convention does not apply only to actions brought under this Convention, as that would render meaningless the words or in contract or in tort or otherwise." (internal quotation marks omitted)). Instead of preempting all state law claims, the Montreal Convention's conditions and limits on liability operate as affirmative defenses so as to ensure that carriers are only subject to liability as allowed by the Convention. *Id.*; *Narkiewicz-Laine*, 587 F. Supp. 2d at 890. Effectively, then, the Montreal Convention operates as a limitation on recovery not as a bar to a state law action.[8] *Raddatz* v. *Bax Global, Inc.*, No. 07-CV-1020, 2008 WL 2435582, at *3 (E.D. Wis. June 16, 2008).

In its reply brief, Iberia argues that the Montreal Convention expressly prohibits plaintiffs' claim, as it does not allow for recovery of non-compensatory damages. Arguments first raised in reply, however, are waived. *Dexia Credit Local* v. *Rogan*, 629 F.3d 612, 625 (7th Cir. 2010). This is because "a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues." *Wright* v. *United States*, 139 F.3d 551, 553 (7th Cir. 1998). Further, the argument raises an affirmative defense, which is only properly a basis for dismissal on a Rule 12(b)(6) motion if the allegations of the complaint demonstrate that plaintiffs have pleaded themselves out of court. *United States* v. *Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Plaintiffs have alleged that EU 261 provides "standardized compensation – separate from individualized compensation which may be provided by other laws upon individualized proof." Compl. ¶ 8. Such standardized compensation would appear to qualify as "non-compensatory

---

[8] Considering *Sompo* and subsequent cases in this district that have followed *Sompo*, the court does not find persuasive the Central District of Illinois's conclusion in *Schoeffler-Miller* v. *Nw. Airlines*, No. 08-CV-4012, 2008 WL 4936737, at *3 (C.D. Ill. Nov. 17, 2008), that a negligence claim is completely preempted. *Schoeffler-Miller* did not address *Sompo* or the Convention's language allowing actions to be brought "in contract or in tort."

damages" prohibited by Article 29 of the Montreal Convention. Yet, in their prayer for relief, plaintiffs request "actual, compensatory damages in an amount to be determined at trial." Without further briefing on the issue, the court will not find plaintiffs' claim to be precluded by the Montreal Convention.[9]

## III. Air Transport Agreement

Iberia further argues that, pursuant to the Air Transport Agreement between the United States and the European Union, EU 261 does not apply to flights departing from the United States. The Air Transport Agreement was entered into by the United States, the European Community, and EU member states in 2007. *See* United States-European Union Air Transport Agreement, Apr. 27, 30, 1997, 46 I.L.M. 470. Article 7 provides:

> 1. The laws and regulations of a Party relating to the admission to or departure from its territory of aircraft engaged in international air navigation, or to the operation and navigation of such aircraft while within its territory, shall be applied to the aircraft utilised by the airlines of the other Party, and shall be complied with by such aircraft upon entering or departing from or while within the territory of the first Party.
>
> 2. While entering, within, or leaving the territory of one Party, the laws and regulations applicable within that territory relating to the admission to or departure from its territory of passengers, crew or cargo on aircraft (including regulations relating to entry, clearance, immigration, passports, customs and quarantine or, in the case of mail, postal regulations) shall be complied with by, or on behalf of, such passengers, crew or cargo of the other Party's airlines.

*Id.* art. 7. Article 7 is not an exclusivity provision; instead, it seeks to ensure only that the laws

---

[9] The ECJ has determined that article 6 of EU 261, which provides that delayed passengers may be entitled to certain assistance such as refreshments, meals, and accommodation, is not inconsistent with the Montreal Convention. Case C-344/04, *Int'l Air Transp. Ass'n* v. *Dep't of Transp.*, 2006 ECJ EUR-lex LEXIS 1818 (Jan. 10, 2006). It has not addressed the compensation requirement in case of cancellation. The questions of whether the Montreal Convention would govern cancellation claims, which do not deal with delay but rather nonperformance, and whether delays longer than three hours qualify as nonperformance under the Convention have not been addressed by the parties.

of a party related to *admission* and *departure* are respected while an airline operates within that party's territory. Its plain language indicates that it reaches laws related to subjects like immigration and customs, not consumer protection. As to consumer protection, the contracting parties only affirmed in the Air Transport Agreement the "importance of protecting consumers." *Id.* art. 16. Thus, the Air Transport Agreement does not appear to have any bearing on plaintiffs' claim. But if it did, in suggesting that consumers should be protected and each party's laws should be respected, it actually supports the applicability of EU 261 to plaintiffs' flight departing from Chicago and arriving in an EU member state.

## IV. Exhaustion of Remedies

Iberia's next argument is that plaintiffs' claim should be dismissed because they failed to exhaust available remedies in the EU prior to filing suit here. This argument does not have merit, either. Plaintiffs need not anticipate or defuse the issue of exhaustion, an affirmative defense, in their complaint. *See Jones* v. *Bock*, 549 U.S. 199, 212, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (prisoner litigation); *Laouini* v. *CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009) (Title VII). But regardless, the court is not convinced that exhaustion is required.

### A. Administrative Exhaustion

Plaintiffs are using a breach of contract action as the vehicle to enforce EU 261 in the United States. There is nothing in Iberia's contract that requires plaintiffs to exhaust any available administrative remedies prior to filing suit. Even if this were a proceeding directly under EU 261, the regulation on its face does not explicitly require exhaustion of administrative remedies. While each member state is required to establish a responsible body for enforcing the regulation, passengers are not required by EU 261 to complain to this body prior to filing suit.

Instead, EU 261 provides only that passengers "may complain" to this body while leaving open the option of resorting to the court system. EU 261 art. 16. Even the EU complaint form Iberia submitted with its briefing does not speak in mandatory terms about the procedure to be followed in seeking to enforce EU 261. *See* Ex. I to Def.'s Mem. There thus appears to be nothing by way of administrative exhaustion that prevents plaintiffs from pursuing their case in this court without having complained to one of the enforcement bodies established under the regulation.

### B.     Exhaustion as a Principle of International Law

Alternatively, Iberia contends that international law requires exhaustion of local remedies prior to plaintiffs' turning to a foreign or international forum to pursue their claim. The Seventh Circuit has suggested in dicta that "[i]t may be that a requirement for exhaustion is itself a basic principle of international law." *Enahoro* v. *Abubakar*, 408 F.3d 877, 886 (7th Cir. 2005); *see also* Restatement (Third) of Foreign Relations Law of the United States § 713 cmt. f ("Under international law, ordinarily a state is not required to consider a claim by another state for an injury to its national until that person has exhausted domestic remedies, unless such remedies are clearly sham or inadequate, or their application is unreasonably prolonged."). This supposed international exhaustion principle appears to focus on situations involving alleged human rights violations and, as applied in the United States, possibly to cases brought under the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, or the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, note, § 2(b).[10] *See Enahoro*, 408 F.3d at 890 n.6 (Cudahy, J., dissenting) ("Exhaustion of remedies requirements are a well-established feature of international human

---

[10] While ATCA provides for jurisdiction only over tort suits brought by aliens, the TVPA provides a cause of action to both aliens and United States citizens. *Enahoro*, 408 F.3d at 887–88 (Cudahy, J., dissenting).

rights law." (citing, *inter alia*, human rights treaties)). The TVPA contains an explicit exhaustion requirement, 28 U.S.C. § 1350, note, § 2(b) ("A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred."), while ATCA does not.[11] *See Flomo* v. *Firestone Nat'l Rubber Co., LLC*, --- F.3d ----, 2011 WL 2675924, at *11 (7th Cir. July 11, 2011). Plaintiffs' claim does not fall within the areas in which exhaustion is typically required by international law. But the fact that plaintiffs have not sought to recover in a European court may be relevant to determining whether the court should decline to exercise jurisdiction over their claim as a matter of international comity. *See id.* ("[A] U.S. court might, as a matter of international comity, stay an Alien Tort suit that had been filed in the U.S. court, in order to give the courts of the nation in which the violation had occurred a chance to remedy it, provided that the nation seemed willing and able to do that.").

---

[11] The European Commission advocated for exhaustion in an amicus brief to the Supreme Court in an ATCA case. *See Sosa* v. *Alvarez-Machain*, 542 U.S. 692, 733 n.21, 124 S. Ct. 2739, 159 L. Ed. 2d 718 (2004) ("[B]asic principles of international law require that before asserting a claim in a foreign forum, the claimant must have exhausted any remedies available in the domestic legal system, and perhaps in other forums such as international claims tribunals."). But the Supreme Court noted only that it "would certainly consider this requirement in an appropriate case," without specifying what such a case would be. *Id.* Just recently, the Seventh Circuit rejected the argument that exhaustion is required in the nation in which an alleged violation of customary international law occurred, characterizing the implications of such a requirement as "border[ing] on the ridiculous." *Flomo*, 2011 WL 2675924, at *11.

## V. International Comity

As a last resort, Iberia argues that this court should, in its discretion, decline to adjudicate plaintiffs' claim on international comity grounds. In its standard formulation, comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton* v. *Guyot*, 159 U.S. 113, 163–64, 16 S. Ct. 139, 40 L. Ed. 95 (1895).

Iberia bases its comity argument on two grounds. First, it claims that the EU has established a comprehensive enforcement mechanism for EU 261 that would be disturbed by this court's adjudication of a claim involving the regulation. As discussed above, the court does not find this argument convincing. While EU 261 does provide that each member state shall designate a body to be charged with enforcing the regulation, it also clearly allows aggrieved passengers to pursue their rights in court. *See* EU 261, preamble (22) ("Member States should ensure and supervise general compliance by their air carriers with this Regulation and designate an appropriate body to carry out such enforcement tasks. The supervision should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law."). Although Iberia claims that European enforcement was intended to be exclusive, it provides no support for this contention nor has the court been able to find any. The fact that plaintiffs did not pursue their claim in a European court does tilt the balance slightly in favor of declining to adjudicate their claim, but plaintiffs' choice of forum is entitled to some

15

deference as well.[12]

Second, Iberia argues that because courts in EU member states have the ability to refer questions of interpretation directly to the ECJ (an option a non-EU court does not have), dismissal is warranted. *See Info. Res., Inc.* v. *Dun & Bradstreet Corp.*, 127 F. Supp. 2d 411, 417 (S.D.N.Y. 2000) (declining to exercise supplemental jurisdiction over a claim under the Treaty of Rome where, among other things, a European court would have the option of seeking an opinion from the ECJ while the federal court would not). This is particularly the case, according to Iberia, because the ECJ's *Sturgeon* decision is allegedly in doubt. While the ECJ has pending before it a referral that asks the ECJ to reevaluate *Sturgeon*, this court will be just as able as a European court to apply the ECJ's forthcoming ruling and could, if necessary, stay a merits decision on compensation for passengers on flights delayed for over three hours until the ECJ addresses the questions before it. Several courts in EU member states have done this, and it is not an unheard of procedure in this court. Of course, European courts are more familiar with EU 261 and its application, but the court will not be faced with an area of law so complicated that declining jurisdiction would be prudent. *Cf. In re Air Cargo Shipping Servs. Antitrust Litig.*, No.

---

[12] While unspoken, Iberia clearly would rather address plaintiffs' claim in a European court, where plaintiffs would not have the option of pursuing a class action. This would effectively lessen Iberia's potential exposure because of the relatively small value of each passenger's claim and the low likelihood of United States citizens bringing suit for an EU 261 violation in a foreign forum. The unavailability of a class action device in Europe may cut in favor of this court declining jurisdiction, as the EU may not have contemplated having the regulation enforced in a mass action. The lack of a class action mechanism in Europe should not be construed as depriving plaintiffs of a forum, as they would still be able to pursue their claim there individually. *See Aguinda* v. *Texaco, Inc.*, 142 F. Supp. 2d 534, (S.D.N.Y. 2001) ("The class action mechanism, added to the Federal Rules of Civil Procedure in 1937, is ultimately nothing more than a convenient procedural device, which most of the world's nations have chosen not to adopt and the merits of which continue to be debated even in the United States. Its absence does not ordinarily render a foreign forum 'inadequate' for purposes of *forum non conveniens* analysis." (citations omitted) (internal quotation marks omitted)). It may, however, change the plaintiffs' economic calculus. As Iberia does not pursue this argument, and in fact states that it is outside the scope of its motion, *see* Reply at 12 n.15, the court need not consider it further.

MD 06-1775(JG)(VVP), 2008 WL 5958061, at *33–34 (E.D.N.Y. Sept. 26, 2008) ("While United States courts routinely apply foreign law, the cases cited by plaintiffs grappled with the comparatively straightforward application of foreign laws of property, contract and tort, as opposed to foreign antitrust law."), *report and recommendation aff'd in part*, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009). As the court is not convinced that international comity warrants dismissal, it will allow plaintiffs' contract claim to proceed in this forum.

## CONCLUSION AND ORDER

For the foregoing reasons, Iberia's motion to dismiss [#29] is denied. Iberia has until August 10, 2011 to answer the complaint.


Dated: July 27, 2011                    Enter: _____
                                                JOAN HUMPHREY LEFKOW
                                                United States District Judge