## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **THEODOROS GIANNOPOULOS,** | ) | |
| **ALEXANDRA GIANNOPOULOS,** | ) | |
| **JAMES VARSAMIS, and** | ) | |
| **LAUREN MITCHELL VARSAMIS,** | ) | |
| **on behalf of themselves and all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 11 C 775** |
| | ) | **Judge Joan H. Lefkow** |
| **vs.** | ) | |
| | ) | |
| **IBERIA LÍNEAS AÉREAS DE ESPAÑA, S.A.,** | ) | |
| **OPERADORA, SOCIEDAD UNIPERSONAL** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

On February 3, 2011, plaintiffs Theodoros and Alexandra Giannopoulos filed this putative class action lawsuit for breach of contract against Iberia Líneas Aéreas de España, S.A., Operadora, Sociedad Unipersonal ("Iberia") alleging that Iberia failed to compensate them for a delayed flight as required by Iberia's conditions of contract and Regulation No. 261/2004 of the European Parliament and European Council ("EU 261").[1] The court denied Iberia's motion to dismiss on July 27, 2011 holding, *inter alia*, that the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, (the "Montreal Convention") did not completely preempt the Giannopoulos plaintiffs' claim. (*See* Dkt. #57.) On December 7, 2011, the Giannopouloses amended their complaint to name James Varsamis and Lauren Mitchell Varsamis as plaintiffs (the "Varsamis plaintiffs"). (Dkt. #83.) Iberia now moves to dismiss the

---

[1] Jurisdiction is founded on the Class Action Fairness Act, 28 U.S.C. § 1332(d). (*See* Dkt. #60.)

Varsamis plaintiffs' breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion (dkt. #88) will be denied.[2]

## BACKGROUND[3]

The Varsamis plaintiffs, Texas residents, purchased tickets to fly on Iberia to Europe. The tickets incorporated Iberia's conditions of contract, a three-page document that incorporates multiple regulations including the Montreal Convention and EU 261. (*See* Am. Compl. Ex. 2.) EU 261 applies to passengers with confirmed tickets on flights departing from an airport located in an European Union ("EU") member state and flights departing from a non-EU member state to an airport in an EU member state if the operating carrier has an operating license granted by an EU member state. Iberia has such a license granted by Spain. The conditions of contract include a notice to passengers that "[a]s established in [EU 261], compensation is fixed in the event of a flight cancellation unless the latter is due to extraordinary circumstances." (*Id*. at 2.) The contract also provides that "[a]s established in [EU 261], in the event of a long delay in relation to the scheduled departure time of flight, passengers are entitled to immediate aid and assistance throughout the duration of the delay." (*Id.*)

Pursuant to EU 261, passengers on qualifying flights that are cancelled are entitled to a set amount of compensation so long as the cancellation was not caused by unavoidable

---

[2] Four other cases founded on similar allegations are currently pending this district against other airlines. *See Polinovsky* v. *Deutsche Lufthansa AG*, No. 11 C 780; *Volodarskiy* v. *Delta Air Lines, Inc.*, No. 11 C 782; *Gurevich* v. *Compagnia Aereas Italiana, SPA*, No. 11 C 1890; and *Lozano* v. *United Continental Holdings, Inc.*, No. 11 C 8258.

[3] The facts recounted in this section are taken from the amended complaint and are presumed true for purpose of resolving the pending motion.

2

extraordinary circumstances.[4]  This compensation is separate from any other right a passenger

may have to compensation.  Article 7 of EU 261 provides standardized money awards based on

the length in kilometers of the flight, while an airline may reduce the standardized award based

on a passenger's actual arrival time compared to the original scheduled arrival time.[5]  Although

EU 261 does not explicitly provide compensation for passengers whose flights are delayed, the

European Court of Justice ("ECJ") has interpreted EU 261 to require airlines to treat passengers

whose flights are delayed by three or more hours as passengers whose flights are cancelled for

purposes of the compensation provision.  Cases C-402/07 & C-432/07, *Sturgeon* v. *Condor*

*Flugdienst GmbH*, 2009 E.C.R. I-10923.

The Varsamis plaintiffs were scheduled to depart on Iberia Flight 3609 on June 25, 2011

from Rome, Italy to Madrid, Spain with continued travel to their final destination of Dallas,

Texas.  Flight 3609 was delayed over five hours, and as a result, the Varsamis plaintiffs were

---

[4] Passengers are not entitled to compensation if they are informed of the cancellation (1) at least two weeks prior to the scheduled departure time, (2) between two weeks and seven days before the scheduled departure time and are offered rerouting allowing them to depart no more than two hours before the scheduled departure time and to arrive at their final destination no more than four hours after the scheduled arrival time, or (3) within seven days of the scheduled departure time and are offered rerouting allowing them to depart no more than one hour before the scheduled departure time and to arrive at their final destination no more than two hours after the scheduled arrival time.  EU 261, art. 5.

[5] Article 7 states,
    Right to compensation
    1.    Where reference is made to this Article, passengers shall receive compensation
          amounting to:
              (a) EUR 250 for all flights of 1500 kilometers or less;
              (b) EUR 400 for all intra-Community flights of more than 1500
              kilometers, and for all other flights between 1500 and 3500 kilometers;
              (c) EUR 600 for all flights not falling under (a) or (b).

In determining the distance, the basis shall be the last destination at which the denial of boarding or cancellation will delay the passenger's arrival after the scheduled time.

EU 261, art. 7.

rerouted by Iberia through Amsterdam, Netherlands with an overnight connection to Dallas. This alternative flight left Rome approximately 11 hours after the Varsamis plaintiffs arrived at the Rome airport for their original flight. When they arrived at the Amsterdam airport, there was no Iberia agent present to assist them or issue them a hotel voucher. As a result, the Varsamis plaintiffs were required to pay for their overnight stay in Amsterdam out of pocket. The Varsamis plaintiffs ultimately reached Dallas on June 26, 2011 almost 21 hours after their original scheduled arrival time. They filed multiple complaints with Iberia through the fax, email and telephone seeking compensation but received only a form email response from Iberia indicating that the airline had received their online submission.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *GE Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678.  At the same time, the plaintiff need not plead legal theories.  *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).  Rather, it is the facts that count.

An affirmative defense need not be anticipated in the complaint to survive a motion to dismiss.  *United States* v. *Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).  A plaintiff may, however, "plead [himself] out of court by pleading facts that establish an impenetrable defense to [his] claims."  *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).  Where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense" the court may dismiss a claim in a Rule 12(b)(6) motion if the claim is precluded.  *Lewis*, 411 F.3d at 842.

## ANALYSIS

Iberia argues that the Varsamis plaintiffs' claim is expressly prohibited under Article 29 of the Montreal Convention, which prohibits recovery of non-compensatory damages.  The Montreal Convention was adopted in 1999 and came into force in the United States on September 5, 2003.  *See Sompo Japan Ins., Inc.* v. *Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 780–81 (7th Cir. 2008).  It replaced the Warsaw Convention, which had been in effect since 1929 to "achiev[e] uniformity of rules governing claims arising from international air transportation."  *El Al Israel Airlines, Ltd.* v. *Tseng*, 525 U.S. 155, 169, 119 S. Ct. 662, 142 L. Ed. 2d 576 (1999) (quoting *E. Airlines, Inc.* v. *Floyd*, 499 U.S. 530, 552, 111 S. Ct. 1489, 113 L. Ed. 2d 569 (1990)).  Provisions of the Montreal Convention are similar to those of the Warsaw Convention, leading courts to look to cases interpreting the latter in determining the Montreal Convention's effect.  *See, e.g., Narkiewicz-Laine* v. *Scandinavian Airlines Sys.*, 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008); *Schoeffler-Miller* v. *Nw. Airlines, Inc.*, No. 08-CV-4012, 2008 WL

4936737, at *3 (C.D. Ill. Nov. 17, 2008); *Paradis* v. *Ghana Airways Ltd.*, 348 F. Supp. 2d 106,

111 (S.D.N.Y. 2004).

Article 29 of the Montreal Convention, upon which Iberia bases its argument for

dismissal, provides:

> In the carriage of passengers, baggage and cargo, any action for damages, however
> founded, whether under the Convention or in contract or in tort or otherwise, can
> only be brought subject to the conditions and such limits of liability as are set out in
> this Convention without prejudice to the question as to who are the persons who have
> the right to bring suit and what are their respective rights. In any such action,
> punitive, exemplary or any other non-compensatory damages shall not be
> recoverable.

Montreal Convention, art. 29.[6] It is settled that the Montreal Convention—like the Warsaw

Convention before it—preempts state law causes of action to the extent that they conflict with it.

*See Giannopoulos* v. *Iberia Lineas Aereas de Espana, S.A.*, No. 11 C 775, 2011 WL 3166159, at

*4 (N.D. Ill. July 27, 2011). Instead of preempting all state law claims, however, the Montreal

Convention's conditions and limits on liability operate as an affirmative defense to ensure that

carriers are only subjected to liability as allowed by the Convention. *See Narkiewicz-Laine*, 587

F. Supp. 2d at 890 ("[C]laims may be brought under the [Montreal] Convention or they may be

brought 'in contract or in tort or otherwise' but such claims are subject to an affirmative defense

based on the conditions and limits of liability set out in the Montreal Convention.") (quoting

Montreal Convention, art. 29); *accord Cosgrove-Goodman* v. *UAL Corp.*, No. 10 CV 1908, 2010

WL 2197674, at *3 (N.D. Ill. June 2, 2010).

---

[6] Article 19 provides that an air carrier is liable for damage caused by delay unless it can prove that it
"took all measures that could reasonably be required to avoid the damage or that it was impossible for it .
. . to take such measures." Montreal Convention, art. 19.

Under EU 261, which Iberia has incorporated in its conditions of contract, confirmed passengers on flights that are cancelled or delayed at least three hours are entitled to compensation unless they receive advance notice and rerouting as set forth by the regulation. *See* EU 261, arts. 5–7; Cases C-402/07 & C-432/07, *Sturgeon* v. *Condor Flugdienst GmbH*, 2009 E.C.R. I-10923. Article 7 entitles such passengers to a standardized monetary award based on the length in kilometers of their flight. *See* EU 261, art. 7. Applying this formula, the Varsamis plaintiffs allege that they are each entitled to €600 because they experienced a delay of three hours or more in international travel.

Under the Montreal Convention, passengers are entitled to reimbursement of up to 4,150 Special Drawing Rights ("SDR") for a delay in travel. *See* Montreal Convention, art. 22(1). As explained by the Seventh Circuit, a SDR

> is an artificial currency, established by a 'basket' of global currencies (the U.S. dollar, the euro, the Japanese yen and the British pound), and published daily by the International Monetary Fund. The value of an SDR fluctuates based on the global currency market, and, under Article [23(1)], it is determined 'at the date of the judgment.'

*Sompo Japan Ins., Inc.*, 522 F.3d at 779 n.3. Article 29, however, expressly states that "punitive, exemplary or any other non-compensatory damages shall not be recoverable." Montreal Convention, art. 29. Iberia now raises the affirmative defense that the standardized award afforded delayed passengers under EU 261 is expressly prohibited by Article 29 of the Montreal Convention. The issue before the court, therefore, is whether the damages sought by plaintiffs under EU 261 are compensatory or punitive in nature.

The United States Supreme Court has stated that compensatory and punitive damages "serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff

has suffered by reason of the defendant's wrongful conduct. The latter . . . operate as 'private

fines' intended to punish the defendant and to deter future wrongdoing." *Cooper Inds., Inc.* v.

*Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001)

(internal citations omitted). Compensatory damages are synonymous with "actual damages," 25

C.J.S. Damages § 3 (updated Sept. 2012), a term that Black's Law Dictionary defines as "[a]n

amount to . . . compensate for a proven injury or loss; damages that repay actual losses." Black's

Law Dictionary at 394 (7th ed. 1999). As explained by Copus Juis Secundum,

> 'Compensatory damages' are those given as compensation as an equivalent for the
> injury done and are awarded to make the injured party whole. They are damages in
> satisfaction of, or in recompense for, loss or injury sustained, awarded to a person as
> compensation, indemnity, or restitution for harm sustained by him or her.

25 C.J.S. Damages § 3 (updated Sept. 2012). Punitive damages, on the other hand, are

"[d]amages awarded in addition to actual damages when the defendant acted with recklessness,

malice or deceit . . . [and] are intended to punish and thereby deter blameworthy conduct."

Black's Law Dictionary at 396 (7th ed. 1999); *see In re Aircrash Disaster Near Roselawn, Ind.

on Oct. 31, 1994*, 960 F. Supp. 150, 152 (N.D. Ill. 1997); 25 C.J.S. Damages § 3 (updated Sept.

2012). In this regard, punitive damages "are an award over and above what is necessary to

compensate a party for his injury . . . [and are] determined according to . . . factors such as the

outrageousness of the injurious act, the defendant's culpability, the defendant's motives and

intent, and the nature and extent of the harm to the plaintiff." *In re Air Crash Disaster at

Gander, Newfoundland*, 684 F. Supp. 927, 931–32 (W.D. Ky. 1987) (internal citations omitted).

The statutory damages awarded by EU 261 do not require a passenger to demonstrate a

concrete loss to recover. Instead, a passenger need only show that he was delayed or cancelled

on a flight of a certain distance. At the same time, EU 261 damages are not determined based on

8

the outrageousness or culpability of the airline's conduct or the extent of harm to the passenger. Rather, they are based on objective factors (*i.e.*, length of the flight and length of the delay) completely unrelated to the airline's motive for the delay or cancellation, and they serve as an incentive for the airline to avoid passenger inconvenience.

Iberia argues that the punitive nature of EU 261 is evidenced by its legislative history. A review of the documents cited by Iberia, however, reveals that the purpose behind the regulation was to compensate passengers and to ensure a basic standard of service. EU 261 replaced Regulation (EEC) No. 295/91 ("EEC 295 "), which "establish[ed] common minimum rules applicable where passengers are denied access to overbooked scheduled flights." *See* EEC 295, art. 1, Def.'s Reply Ex. H. EEC 295 sought to establish "certain common minimum standards in the field of denied-boarding compensation [to] ensure that the quality of air carriers' services is maintained in the context of increased competition." *Id.* at Whereas Clause. On December 12, 2001, the European Commission submitted a proposal for a new regulation designed to enhance the protections afforded in EEC 295. *See* Proposal for a Regulation of the European Parliament and of the Council Establishing Common Rules on Compensation and Assistance to Air Passengers in the Event of Denied Boarding and of Cancellation or Long Delay of Flights & Explanatory Memorandum, Def.'s Reply Ex. I. As indicated by its name, the goal of the proposal was to establish common rules for *compensation* and assistance to air passengers, a "basic aim" of which was to "induce operators to be sufficiently cautious in their reservations policy as to render denied boarding exceptional not systematic." Explanatory Memorandum ¶ 16. The European Commission believed that EEC 295 did not adequately "dissuade [operators] from excessive denial of boarding or cancellation, nor give [them] incentives to balance the

commercial advantages [of denied boarding and cancellations] against the cost to passengers." *Id.* ¶ 5. Thus, in an effort to "protect passengers adequately," the proposal required operators to "compensate passengers at a fixed rate, high enough *both* to offset the delay and trouble caused [by the delay] *and* to dissuade operators from overbooking to such an extent that they routinely deny boarding." *Id.* ¶¶ 5, 13, 14. (emphasis added). The adoption of EU 261 achieved this dual purpose of compensating passengers and providing incentives to operators to avoid cancellations and delays.

Iberia also argues that because EU 261 provides for a standardized award, it cannot be considered "compensation." In other contexts, however, courts have recognized that standardized statutory damages can serve a compensatory purpose. *See, e.g., Bateman* v. *Am. Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010) ("Congress expressly created a statutory damages scheme that intended to compensate individuals for actual or potential damages resulting from [Fair and Accurate Credit Transactions Act] violations, without requiring individuals to prove actual harm."); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 342 (N.D. Ill. 2002) ("In the instant case, the language of § 1681n(a)(1)(A) [of the Fair Credit Reporting Act] clearly and unambiguously allows for actual or statutory damages as the measure of compensatory damages . . . . Punitive damages are then allowed in addition to whatever measure of compensatory damages the plaintiff elects.") (emphasis omitted); *United States* v. *Operation Rescue Nat'l*, 111 F. Supp. 2d 948, 963 (S.D. Ohio 1999) (finding that "statutory damages are a subset of compensatory damages, with actual damages being the other subset" under the Freedom of Access to Clinic Entrances Act); *see also* 25 C.J.S. Damages § 3 (updated Sept. 2012) ("'Actual damages'. . . includes all damages except exemplary or punitive

10

damages.").

Moreover, Iberia's conditions of contract indicate that the airline itself intended the awards mandated by EU 261 to serve as compensation for inconvenienced passengers, not as a fine against the airline. *See* Am. Compl. Ex. 2 at 2 ("As established by [EU 261], *compensation* is fixed in the event of flight cancellation unless the latter is due to extraordinary circumstances.") (emphasis added); *id.* ("As established by [EU 261], in the event of denied boarding to passengers . . . *compensation* is fixed and the carrier is liable for the provision of immediate aid and assistance to affected passengers.") (emphasis added). Given that one of the purposes of the regulation is to compensate passengers and the fact that standardized damages can be considered a form of compensation, the court declines to hold that EU 261 establishes a purely non-compensatory regime for the award of damages. As such, the court finds that Article 29 of the Montreal Convention does not prohibit recovery under EU 261 and Iberia's motion to dismiss is on this basis is therefore denied.[7]

## CONCLUSION AND ORDER

For the foregoing reasons, Iberia's motion to dismiss [#88] is denied.


Dated: November 1, 2012                    Enter: _____

                                                   JOAN HUMPHREY LEFKOW
                                                   United States District Judge

---

[7] The Advocate General of the Court of Justice of the European Union also recently issued an opinion concluding that compensation provided under Article 7 of EU 261 is consistent with Articles 19 and 29 of the Montreal Convention. *See* Opinion of the Advocate General in joined cases *Nelson & Others* v. *Deutsche Lufthansa AG*, Case C-581-10 and *TUI Travel plc & Others* v. *Civil Aviation Authority*, Case C-629/10, Pls.' Supplemental Authority Ex. A.