IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THEODOROS GIANNOPOULOS, ALEXANDRA GIANNOPOULOS, JAMES VARSAMIS, and LAUREN MITCHELL VARSAMIS on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> IBERIA LÍNEAS AÉREAS DE ESPAÑA, S.A., OPERADORA, SOCIEDAD UNIPERSONAL <br><br> Defendant. | No. 11 C 775 <br><br> Hon. Joan H. Lefkow |

**OPINION AND ORDER**

Plaintiffs Theodoros and Alexandra Giannopoulos (the "Giannopoulos plaintiffs"), James Mitchell and Lauren Mitchell Varsamis (collectively "plaintiffs") filed this putative class action lawsuit for breach of contract against Iberia Líneas Aéreas de España, S.A. Operadora, Sociedad Unipersonal ("Iberia") alleging that Iberia failed to compensate them for flight delays as required by Iberia's conditions of contract and Regulation No. 261/2004 of the European Parliament and European Council ("EU 261"). The court previously denied Iberia's motion to dismiss the Giannopoulos plaintiffs' claims, and the airline now moves for summary judgment on the same. In their response brief, plaintiffs concede that the Giannopoulos plaintiffs are not appropriate class representatives but ask this court to deny Iberia's motion with respect to their individual claims. For the reasons set forth herein, Iberia's motion (dkt. #91) will be denied.[1]

---

[1] Jurisdiction is founded on the Class Action Fairness Act, 28 U.S.C. § 1332(d). (*See* Dkt. #60.)

**BACKGROUND**[2]

The Giannopoulos plaintiffs, Illinois residents, purchased tickets to fly on Iberia from Chicago, Illinois to Athens, Greece with a connecting flight in Madrid, Spain. (Def.'s SOF ¶¶ 2–3.) The Giannopoulos plaintiffs' tickets incorporated Iberia's conditions of contract, which incorporated EU 261. (*Id.* ¶ 37; Am. Compl. Ex. 2 at 3 of 8.) The conditions of contract included a notice to passengers that "[a]s established in [EU 261], compensation is fixed in the event of a flight cancellation unless the latter is due to extraordinary circumstances." (*Id.*) The conditions of contract also provided that "[a]s established in [EU 261], in the event of a long delay in relation to the scheduled departure time of flight, passengers are entitled to immediate aid and assistance throughout the duration of the delay." (*Id.*)[3]

Article 7 of EU 261 provides standardized money awards to passengers whose flights are cancelled based on the length in kilometers of the flight. (Am. Compl. Ex. 1, art. 7.)[4] Although

---

[2] The facts set forth in this section are derived from the statements of fact supporting exhibits, declarations and other admissible evidence submitted by the parties to the extent that they comport with Local Rule 56.1. *See, e.g., Smith* v. *City of Chicago,* 242 F.3d 737, 741 (7th Cir. 2001). The facts are taken in the light most favorable to the non-movant, the Giannopoulos plaintiffs. *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[3] EU 261 applies to passengers with confirmed tickets on flights departing from an airport located in an European Union ("EU") member state and flights departing from a non-EU member state to an airport in an EU member state if the operating carrier has an operating license granted by an EU member state. Iberia has such a license granted by Spain. *See Giannopoulos* v. *Iberia Lineas Aéreas de España, S.A.,* No. 11 C 775, 2011 WL 3166159, at *1 (N.D. Ill. July 27, 2011).

[4] Passengers are not entitled to compensation if they are informed of the cancellation (1) at least two weeks prior to the scheduled departure time, (2) between two weeks and seven days before the scheduled departure time and are offered rerouting allowing them to depart no more than two hours before the scheduled departure time and to arrive at their final destination no more than four hours after the scheduled arrival time, or (3) within seven days of the scheduled departure time and are offered rerouting allowing them to depart no more than one hour before the scheduled departure time and to arrive at their final destination no more than two hours after the scheduled arrival time. (Am. Compl. Ex. 1, art. 5(1)(c).)

EU 261 does not explicitly provide compensation for passengers whose flights are delayed, the European Court of Justice ("ECJ") has interpreted EU 261 to require airlines to treat passengers whose flights are delayed by three or more hours as passengers whose flights are cancelled for purposes of the compensation provision. Cases C-402/07 & C-432/07, *Sturgeon* v. *Condor Flugdienst GmbH*, 2009 E.C.R. I-10923. Article 5 excuses liability under Article 7 if the air carrier "can prove that the cancellation [or delay was] caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken." (Am. Compl. Ex. 1, art. 5(3).)

On May 9, 2010, the Giannopoulos plaintiffs were scheduled to depart on Iberia flight #6274 from Chicago, Illinois to Madrid, Spain. (Def.'s SOF ¶ 20.) From Madrid, the Giannopoulos plaintiffs were to continue to their final destination of Athens, Greece, arriving on May 10, 2010. (*Id.*) During discrete time periods of late April and early May 2010, normal flight operations across the North Atlantic and European airspace were disrupted by a vast volcanic ash cloud caused by volcanic eruptions of the Eyjafjallajökull Volcano in Iceland. (Pls.' Resp. Def.'s SOF ¶ 6.) On May 9, 2010, the Iceland Meteorological Office issued a volcanic ash advisory for the continued eruption of the Eyjafjallajökull Volcano. (Arroyo Decl. ¶ 8 & Ex. B.) This advisory forecasted the ash plume created by the volcano. It showed the volcano's ash cloud extending from Iceland, south through the North Atlantic to almost the tip of Africa and east into parts of Europe, including at times covering Madrid and/or Vienna. (*Id.*) Guidance from the International Civil Aviation Organization ("ICAO") instructs that "[v]olcanic ash is a known hazard to aircraft, and . . . [an] aircraft encountering volcanic ash must avoid it completely."

(Christensen Decl. Ex. E at 55 of 145.) Iberia procedures similarly require pilots to "[a]void flight into areas of known volcanic activity." (Arroyo Decl. Ex. A at 2 of 39.)

In response to the Eyjafjallajökull Volcano eruption, Iberia's Fight Dispatch Department used meteorological data to create flight plans re-routing flights around airspace with known or forecasted volcanic ash clouds. (Def.'s SOF ¶ 8.) This caused inbound flight #6275 from Madrid to arrive in Chicago a little over two hours late. (*Id.* ¶ 12.) Consequently, outbound flight #6274, the Giannopoulos plaintiffs' flight, departed Chicago for Madrid just over two hours after its scheduled time of departure. (*Id.* ¶ 14.) The Flight Dispatch Department also re-routed outbound flight #6275 to the south end of the ash cloud, adding approximately 1,100 nautical miles and 1 hour and 30 minutes to the flight. (*Id.* ¶ 15.)

Due to the delay and re-routing, Iberia thought it unlikely that the Giannopoulos plaintiffs would reach Madrid in time to connect with their scheduled Athens flight. (*Id.* ¶ 26.) As a result, two hours after flight #6274 departed Chicago, Iberia reserved space on alternative flights for the Giannopoulos plaintiffs in case they missed their connection. (Calatayud Decl. ¶ 8.) These alternative flights included Iberia flight #3572, which was scheduled to depart Madrid at 3:35 p.m. and arrive in Vienna at 6:25 p.m., and Aegean Airlines flight A3 881, which was scheduled to depart Vienna at 7:00 p.m. and arrive in Athens at 10:20 p.m. (Def.'s SOF ¶ 27–28.) This route left the Giannopoulos plaintiffs 35 minutes to make their connecting flight in Vienna. (*See id.* ¶ 28.)

The Giannopoulos plaintiffs arrived in Madrid on May 10, 2010 at 11:03 a.m., more than three hours after their scheduled arrival time. (Def.'s SOF ¶¶ 16, 26.) Upon their arrival, the Giannopoulos plaintiffs accepted Iberia's proposed re-route and Iberia booked them on the

4

alternative flights just under two hours before the flight #3572 was scheduled to depart Madrid. (*Id.* ¶ 27; Pls.' Resp. Def.'s SOF ¶ 27.) At the time of the booking, Iberia knew that the volcanic ash cloud was causing significant delays and disruptions in flight operations at the Madrid airport and generally in Europe. (Pls.' Resp. Def.'s SOF ¶ 27.)

The Giannopoulos plaintiffs were scheduled to depart Madrid for Vienna at 3:35 p.m., but due to the volcanic ash cloud they did not depart until 4:44 p.m. (Def.'s SOF ¶¶ 17, 29; Arroyo Decl. ¶ 21.) As a result, the Giannopoulos plaintiffs did not arrive in Vienna until 7:48 p.m., after Aegean Airlines flight A3 881 had already departed. (Def.'s SOF ¶¶ 29–30.) In Vienna, Iberia booked the Giannopoulos plaintiffs on the next available flight to Athens, which was Olympic Airways flight #160, departing on May 11, 2010 at 12:10 p.m. (*Id.* ¶ 31.) Iberia also provided them with hotel and meal vouchers to use during their overnight stay in Vienna on May 10, 2010. (*Id.* ¶ 32.) The next day, the Giannopoulos plaintiffs boarded flight #160 without incident and arrived in Athens approximately twenty-four hours after their originally scheduled arrival time. (*Id.* ¶ 33.) After returning to the United States, the Giannopoulos plaintiffs filed a claim for EU 261 compensation but Iberia denied their request. (*Id.* ¶ 35; Christensen Decl. Ex. D, T. Giannopoulos Dep. 49:15–19.)

**LEGAL STANDARD**

Summary judgment is proper where the movant is entitled to judgment as a matter of law because the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record demonstrate that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(a) & (c). In determining whether there is such a genuine issue of fact, the court must "construe the facts and

5

draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley* v. *City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The party seeking summary judgment bears the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp*. v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). This burden is satisfied and summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. To avoid summary judgment, the non-moving party must therefore go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 266 (citation omitted).

## ANALYSIS

Plaintiffs seek compensation from Iberia for flight delays as required by Article 7 of EU 261. Specifically, the Giannopoulos plaintiffs seek compensation for delayed flight #3572 from Madrid to Vienna on May 10, 2010.[5] Plaintiffs also seek to withdraw the Giannopoulos plaintiffs

---

[5] Plaintiffs admit that "extraordinary circumstances" caused the delay in flight #6274 from Chicago to Madrid on May 9, 2010 and that Iberia took "all reasonable measures" to avoid this delay. (Pls.' Resp. at 1–2.) Summary judgment in Iberia's favor is therefore proper as to this flight.

as class representatives conceding that their flight falls outside the class definition.[6] Iberia objects to the withdrawal under Federal Rule of Civil Procedure 41 and moves for summary judgment on the Giannopoulos plaintiffs' claims.

## I.     Voluntary Dismissal under Rule 41

As an initial matter, Federal Rule of Civil Procedure 41 states that after a defendant has served a motion for summary judgment, the plaintiff may voluntarily dismiss an action only upon

---

[6] The class definition is as follows:

All persons residing in the United States who meet the following requirements:

(1) Such person had a confirmed reservation on a flight operated by Iberia by motorized fixed wing aircraft schedule[d] to arrive at its destination on or after February 3, 2009;

(2) Such flight was scheduled either to depart from an airport located in the territory of a member state to which the Treaty Establishing the European Community ("Treaty") applies or to arrive at an airport situated in the territory of a member state to which the Treaty applies;

(3) Such flight was delayed or cancelled for a reason other than extraordinary circumstances;

(4) Such person was informed of the delay or cancellation less than seven days before the scheduled time of departure and was not offered re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival;

(5) Such person affected by delay was delayed for at least three hours; and

(6) Such person has not received compensation in the amount set forth in Article 7 of EU Regulation 261/2004.

(Am. Compl. ¶ 53.) Plaintiffs state that the Giannopoulos plaintiffs are not appropriate class representatives because the class definition will not include flights coded, recorded and reported to the International Civil Aviation Authority as cancelled or delayed for reasons due to weather or meteorological conditions. As such, the Giannopoulos plaintiffs will fall outside the definition of the class.

order of the court. Fed. R. Civ. P. 41(a)(1)–(2). Plaintiffs announced their intention to withdraw the Giannopoulos plaintiffs as class representatives more than three weeks after Iberia moved for summary judgment. (*See* Dkt. #91 & #99.) Iberia argues that the Giannopoulos plaintiffs are prohibited under Rule 41(a)(2) from withdrawing as putative class representatives without a court order, particularly given the fact that Iberia has expended considerable time and expense defending the action. (Dkt. #101.) Iberia asks the court to require the Giannopoulos plaintiffs to file a formal motion to withdraw as required by Rule 41. Under Rule 41(a)(2), the Giannopoulos plaintiffs must seek leave of the court before withdrawal is possible. The Giannopoulos plaintiffs will therefore remain class representatives until further order of court.

II.     **Iberia's Motion for Summary Judgment**

It is undisputed that the Giannopoulos plaintiffs meet all the requirements for recovery under EU 261 as set forth in the class definition except number (3), which prohibits recovery where the delay qualifies for the "extraordinary circumstances" exception. Under Article 5(3) EU 261, "[a]n operating air carrier shall not be obligated to pay compensation in accordance with Article 7, if it can prove that the cancellation is caused by extraordinary circumstances, which could not have been avoided even if all reasonable measures had been taken." (Am. Compl. Ex. 1, art. 5(3).) "Such circumstances may, in particular, occur in cases of . . . meteorological conditions incompatible with the operation of the flight concerned." (*Id.* at Recital 14.) Plaintiffs admit the eruption of the Eyjafjallajökull Volcano and subsequent closure of European airspace due to the resulting ash cloud constitutes an extraordinary circumstance. Plaintiffs argue, however, that it was unreasonable for Iberia to book the Giannopoulos plaintiffs on flight

8

#3725[7] because it allowed for only a 35-minute connection window. Thus, the issue before the court is whether Iberia took "all reasonable measures" to avoid the Giannopoulos plaintiffs' delay as required by EU 261.

EU 261 does not define "all reasonable measures." This provision, however, is analogous to the standard set forth in Article 19 of the Montreal Convention,[8] which exempts air carriers from liability where the carrier took "all measures that could reasonably be required to avoid the damage." Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, 2242 U.N.T.S. 350 (the "Montreal Convention").[9] To satisfy this standard, the defendant carrier must show that it took "'all precautions that in sum are appropriate to the risk, i.e., measures reasonably available to defendant and reasonably calculated, in cumulation, to prevent the subject loss.'" *Helge Mgmt., Inc.* v. *Delta Air Lines, Inc.*, No. CIV.A. 11-10299-RBC, 2012 WL 2990728, at *3 (D. Mass. July 19, 2012) (quoting *Palma* v. *Am. Airlines, Inc.*, No. 09–23212–CIV, 2010 WL 5140592, at *5 (S.D. Fla. Dec.9, 2010) (interpreting a similar provision in the Warsaw Convention, the precursor to the Montreal Convention)). "The failure to take any particular precaution that might have prevented the loss does not necessarily prevent the carrier from relying on this defense; not every possible precaution must be taken." *Palma*,

---

[7] Recall that flight #3725 was scheduled to depart Madrid at 3:35 p.m. and arrive in Vienna at 6:25 p.m. It departed at 4:33 p.m. and arrived at 7:48 p.m. causing the Giannopoulos plaintiffs to miss their 7:00 p.m. connecting flight to Athens.

[8] Article 19 of the Montreal Convention states that "the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures."

[9] The court could not locate, nor did the parties cite, any cases relying on the Montreal Convention to interpret EU 261. Given the similar language and purpose of the two laws, however, it is reasonable for this court to look to cases construing the Montreal Convention when interpreting EU 261.

9

2010 WL 5140592, at *5 (citing *Mfrs. Hanover Trust Co.* v. *Alitalia Airlines*, 429 F. Supp. 964, 967 (S.D.N.Y. 1977), *aff'd* 573 F.2d 1292 (2d Cir. 1977)). Moreover, in interpreting EU 261, the ECJ[10] has stated that the party seeking to invoke the exception must show that the extraordinary circumstances could not have been avoided by "measures which . . . meet, inter alia, conditions which are technically and economically viable for the air carrier concerned." Case C-549/07, *Wallentin-Hermann* v. *Alitalia-Linee aeree Italiane SpA*, 2008 E.C.R. I-11061, at ¶ 40. Thus, to satisfy this defense, Iberia must show that it took a technically and economically viable measure that was reasonably calculated to avoid the Giannopoulos plaintiffs' delay. (*See* Am. Compl. Ex. 1, art 5(3).)

Iberia alleges that it took such a measure here. According to the airline, the only permissible way to conduct its Madrid-Chicago operations safely on May 9 and 10, 2010 was to re-route the flight around the volcanic ash cloud and incur delays. This re-routing was mandated by ICAO guidance and Iberia procedures. While the Giannopoulos plaintiffs were en route from Chicago to Madrid, Iberia recognized that they would likely miss their connecting flight to Athens. If the Giannopoulos plaintiffs missed this flight, Iberia did not have another direct flight to Athens scheduled that day. (Calatayud Decl. ¶ 8.) As a result, Iberia reserved them a spot on Iberia flight #3725 from Madrid to Vienna and Aegean Airlines flight A3 881 from Vienna to Athens. The Aegean Airlines flight was scheduled to arrive in Athens at 10:20 p.m. on May 10, 2012, allowing the Giannopoulos plaintiffs to arrive in Athens on the same day they arrived in Europe. The Giannopoulos plaintiffs accepted this reservation upon their arrival in Madrid and Iberia booked the re-routed flights. Flight #3725 to Vienna was delayed, however, causing the

---

[10] The court considers ECJ opinions to be persuasive, non-binding legal authority.

Giannopoulos plaintiffs to miss their connecting flight to Athens. As a result, they were forced to spend the night in Vienna and did not arrive in Athens until May 11, 2010. Nevertheless, Iberia asserts that re-routing the Giannopoulos plaintiffs was reasonably calculated to avoid their delay because Iberia had no other scheduled flights to Athens on May 10, 2010 and if the Giannopoulos plaintiffs flew through Vienna, they could arrive in Athens on the same day.

Plaintiffs argue that Iberia should not have re-routed them on a flight that allowed them only 35 minutes to make their connecting flight in Vienna. By the time the Giannopoulos plaintiffs arrived in Madrid and Iberia booked[11] their re-routed flights, the airline knew that the volcanic ash cloud was causing significant delays and disruptions in flight operations across Europe, and that the Iceland Meteorological Office had forecasted significant cloud coverage over most of Europe, including Vienna. (Arroyo Decl. ¶ 8 & Ex. B.) Iberia also knew that travel through this volcanic ash cloud was not possible. (*See, e.g., id.* Ex. A; Christensen Decl. Ex. E.) Nevertheless, Iberia booked the Giannopoulos plaintiffs on a flight to Vienna that provided only a 35-minute connection window. Iberia has offered no explanation as to why it believed that 35 minutes was reasonable under these circumstances.

---

[11] Iberia reserved the Giannopoulos plaintiffs a seat on the re-routed flights while they were en route from Chicago to Madrid, 13 hours before flight #3725 was scheduled to depart. (Catalyud Decl. ¶ 8.) These reservations were not confirmed and booked, however, until the Giannopoulos plaintiffs arrived in Madrid, two hours before flight #3725's scheduled departure time. (Def.'s SOF ¶¶ 26; Plf.s' Resp. Def.'s SOF ¶ 27.) Iberia argues that plaintiffs have failed to provide any evidence that, at the time Iberia made the reservation, it knew that the volcanic ash situation would inevitably cause the Giannopoulos plaintiffs to miss their Vienna-Athens connection. Although Iberia may not have known the extent of the European delays when it reserved the re-routed flights 13-hours prior, given the extensive monitoring by the airline and others, the court believes that Iberia was aware of the real possibility of a delay by the time it actually booked the flights.

Ironically, Iberia believed that a similar connection window was insufficient to allow the Giannopoulos plaintiffs to make their original Athens connection in Madrid. When the Giannopoulos plaintiffs arrived in Madrid, they had 37 minutes to make their original connecting flight to Athens, despite their delayed arrival. Flight #6274 from Chicago arrived in Madrid at 11:03 a.m. and the Giannopoulos plaintiffs' original connecting flight #3884 from Madrid to Athens was scheduled to depart at 11:40 a.m. (Def.'s SOF ¶¶ 20, 26.) This is two minutes more than the Giannopoulos plaintiffs had to make their scheduled connection in Vienna. Nevertheless, Iberia determined that 37 minutes was not sufficient, causing the Giannopoulos plaintiffs to be re-routed through Vienna.

Iberia has offered little explanation for its re-routing decision. Its position is that because the Giannopoulos plaintiffs could not make their original connection, and there were no other scheduled flights to Athens that day, that it was reasonable to re-route them through Vienna so they could arrive in Athens on the same day. Iberia, however, was required to "take account of the risk of delay connected to the possible occurrence of extraordinary circumstances" at the time it reserved and booked the re-routed flights. Case C-294, *Eglitis* v. *Latvijas Republikas Ekonomikas ministrija*, 2011 E.C.R. 00000 (May 12, 2011), at ¶ 27. Given the extensive coverage of the volcanic ash cloud and the resulting delays known to Iberia at the time of booking, rational jurors could differ as to whether the airline took "all reasonable measures" to avoid the delay. Iberia's motion for summary judgment is therefore denied. *See, e.g., Palma* v. *Am. Airlines, Inc.*, 09-23212-CIV, 2010 WL 5140592, at *5 (S.D. Fla. Dec. 9, 2010) (denying summary judgment when a rational jury could differ as to whether the airline took all "necessary measures" under the Warsaw Convection to avoid the damage).

**CONCLUSION AND ORDER**

For the foregoing reasons, Iberia's motion for summary judgment (dkt. #91) is denied. The Giannopoulos plaintiffs will remain class representatives until further order of court pursuant to Federal Rule of Civil Procedure 41(a)(2).

Dated: November 9, 2012        Enter: _____
                                                                 JOAN HUMPHREY LEFKOW
                                                                 United States District Judge