UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THEODOROS GIANNOPOULOS, et al.,

               Plaintiffs,

               v.

IBERIA LÍNEAS AÉREAS DE ESPAÑA, S.A.,
OPERADORA, SOCIEDAD UNIPERSONAL,

               Defendant.

No. 11 C 775

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiffs are four individuals who purchased airline tickets from defendant Iberia Líneas Aéreas de España for travel between the United States and Europe. *See* R. 156. Plaintiffs' flights were delayed, and they bring a putative class action alleging violation of a European Union regulation that requires compensation for airline delays under certain circumstances. *Id.* In support of their motion for class certification, Plaintiffs proffer the expert report of Clint Rhoden. R. 211-1. Iberbia has moved to strike Rhoden's report. R. 194. For the reasons stated below, Iberia's motion to strike is denied.

European Union Regulation No. 261/2004 requires airlines to compensate airline passengers for delayed and canceled flights under certain circumstances. Specifically, and most relevant to this case, airline passengers have the right to compensation under the Regulation if:

- they were scheduled to fly to or from Europe, *id.* Art. 3(1), and were not traveling free of charge or at a reduced fare not available directly or indirectly to the public, *id.* Art. 3(3);

- their flights were cancelled, and they were:

  o not informed of a cancellation at least two weeks in advance, *id.* Art. 5(1)(c)(i); or

  o were informed of a cancellation between 14 and 7 days in advance, but were not offered a flight change that allowed them to depart no more than two hours before their originally scheduled flight and to reach their destination less than four hours after their originally scheduled flight, *id.* Art. 5(1)(c)(ii); or

  o were informed of a cancellation less than 7 days in advance, but were not offered a flight change allowing them to depart no more than one hour before their originally scheduled flight and allowed them to arrive no more than two hours after their originally scheduled flight, *id.* Art. 5(1)(c)(iii); and

  o their flights were not cancelled due to extraordinary circumstances, *id.* Art. 5(3);

- their flights were delayed:

  o for two hours or more and the flight was for a distance of 1,500 kilometers or less, *id.* Art. 6(1)(a);

  o for three hours or more and the flight was for a distance of more than 1,500 kilometers within Europe, *id.* Art. 6(1)(b);

  o for three hours or more and the flight was for a distance of between 1,500 and 3,500 kilometers, *id.* Art. 6(1)(b); or

  o for four hours or more, *id.* Art. 6(1)(c).

The Regulation provides for compensation of €250 for flights of 1,500 kilometers or less; €400 for flights within the Europe of more than 1,500 kilometers and all flights between 1,500 and 3,500 kilometers; and €600 for all other flights. *Id.* Art. 7(1).

Iberia records information about its flights, including information about cancellations and delays, in databases known by the acronyms EPYR, CODA and CLARA. Plaintiffs retained Rhoden to combine or aggregate the information in these databases into a relational database. R. 196-2 Ex. A at 1. The relational database allowed Rhoden to run searches or queries across the three original databases and to compare the information they contain. *Id.* Once Rhoden had aggregated this information, Plaintiffs asked him a number of questions about the data. *Id.*

In response to Plaintiffs' questions, Rhoden ran queries designed to produce lists of cancelled flights and flights delayed 180 minutes or more, for which there was no "technical occurrence report," and which were described by certain IATA codes.[1] *Id.* at 10, 17, 20-23, 28. He then ran queries to count the number of claims passengers on those flights had submitted to Iberia, *id.* at 28-30, and the percentage of those claims for which Iberia had paid compensation greater than €0, €250, €400 and €600. *Id.* at 30-36. Rhoden also estimated the number of passengers on canceled and delayed flights by multiplying the number of flights included in the lists he produced by the average number of passengers on an Iberia flight. *Id.* at 36-37. Rhoden also counted the number of vouchers Iberia provided to passengers on these flights and, using his estimate for the number of passengers on canceled and

---

[1] "IATA" stands for the International Air Transport Association, which publishes numerical codes that airlines, including Iberia, use to describe the reason for a delay. R. 196 at 4.

delayed flights, calculated the percentage of passengers who received vouchers. *Id.* at 37-45.

Plaintiffs contend that "Rhoden is a data processing expert who . . . is presented primarily to demonstrate that

> (a) the flight information contained in Iberia's EPYR database can be queried to provide lists of cancelled and delayed flights relevant to the Class definition . . . ;
>
> (b) the Class Flights can be ascertained through straightforward database queries;
>
> (c) Iberia's EPYR and CLARA databases can be queried (individually and collectively) to determine how often Iberia honored claims made by passengers on Class Flights;
>
> (d) Iberia denied the vast majority of claims for compensation made by individual passengers on Class Flights; and
>
> (e) only one percent of passengers on delayed flight received any monetary compensation from Iberia."

R. 220 at 1. More succinctly, Plaintiffs contend that "Rhoden is presented to demonstrate that:

> [1] the flight information contained in Iberia's databases can be queried to provide lists of cancelled and delayed flights relevant to the Class definition. . . .[; and,]
>
> [2] Iberia's databases can be queried (individually and collectively) to determine how often Iberia honored claims made by passengers on Class flights and to show that Iberia denied the vast majority of claims for compensation.

*Id.* at 10-11.

Iberia does not question Rhoden's qualifications to perform the database work and number crunching he did here. *See generally*, R. 196; R. 225. Iberia's expert testified that Rhoden's work was "in a mechanical sense . . . . accurate." R. 220-1 Ex. A at 85:18-24; 123:5-8.

Rather, Iberia argues that Rhoden's report is "unreliable and irrelevant" because the information contained in the databases is insufficient to determine whether particular passengers are "eligible for EU 261 compensation." R. 196 at 1, 4. Specifically, Iberia argues that the databases do not contain the following information:

> 1) The passenger's ticket fare and contract terms.
>
> 2) The identity of both the carrier that actually operated the passenger's flight, which might or might not be Iberia, and the ticketing carrier.
>
> 3) Whether, based on the passenger's itinerary, the passenger's flights are subject to a code-share agreement or another contract between the ticketing and operating carriers.
>
> 4) The passenger's actual check-in time and whether the check-in time was at least 45 minutes prior to the departure of the flight in question.
>
> 5) The time the airline notified the passenger of the flight cancellation or delay.
>
> 6) The re-routing options offered to, and accepted or rejected by, the passenger (which might not have been saved in any electronic form).
>
> 7) The cause of the flight cancellation or delay.

8) The measures the operating carrier took to avoid the cancellation or delay.

9) The passenger's scheduled and actual arrival times at his or her final destination.

10) For flights originating outside the European Union, whether the passenger received compensation in a third country.

11) The passenger's country of residence.

R. 196 at 11-12. Iberia contends that without this information, Rhoden's queries cannot account for passenger re-routing that enables a delayed passenger to arrive on time, R. 225 at 3-5, passengers who are delayed on one leg of their trip but arrive at their ultimate destination on time, *id.* at 5-7, or passengers whose flights are delayed or cancelled due to "extraordinary circumstances" and are, thus, not eligible for compensation under the Regulation. *Id.* at 7-10. Iberia also argues that Rhoden does not have a substantive understanding of what information is stored in Iberia's databases and, thus, excludes relevant data codes in producing his results. *Id.* at 10-15. At bottom, Iberia's argument boils down to an argument that "no aggregate methodology exists to identify putative class members" because Iberia's databases do not include the information relevant to all the elements of a claim under the Regulation. R. 196 at 15.

Iberia may be correct that the evidence will eventually show that it is not possible to use the databases to identify putative class members. But that is not the issue here on this motion to strike. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 425 (7th Cir. 2000) ("[T]he question . . . is not whether the reports

proffered by the plaintiffs prove the entire case; it is whether they were prepared in a reliable and statistically sound way, such that they contained relevant evidence that a trier of fact would have been entitled to consider.") *Srail v. Village of Lisle*, 249 F.R.D. 544, 563 (N.D. Ill. 2008) ("Plaintiffs ultimately may be unable to persuade a factfinder that [the expert's] testimony should carry the day, but that does not make his testimony inadmissible . . . .").

The Court's "gatekeeping" task on this motion to strike is to "ensure" that Rhoden followed a reliable method to aggregate the databases and run queries on those databases. *See Lees* v. *Carthage College*, 714 F.3d 516, 521 (7th Cir. 2013) (citing Fed. R. Evid. 702(c), (d) (expert "testimony [must be] the product of reliable principles and methods," and "the expert [must have] reliably applied the principles and methods to the facts of the case")); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."). Here, Iberia does not dispute that Rhoden followed a reliable method to aggregate the databases and run queries on those databases. *See* R. 220-1 Ex. A at 85:18-24 (Rhoden's work is "in a mechanical sense . . . accurate"); *id.* at 123:5-8.

The Court also must determine whether Rhoden's report is relevant to the case and would be helpful to the trier of fact. *See* Fed. R. Evid. 702(a) ("the expert's scientific, technical, or other specialized knowledge [must] help the trier of fact to understand the evidence or to determine a fact in issue"); *Lees*, 714 F.3d at 521

("the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case").

In this case, the data Rhoden has produced is both helpful and relevant to this case. Iberia admits that the databases at issue contain the information it has regarding its flight cancelations, delays, and compensation paid. R. 196 at 3, 8-9. Rhoden has made it possible to run queries across these combined databases to reveal which of Iberia's flights were cancelled or delayed for 180 minutes or more, R. 196-2 Ex. A at 10-28, whether Iberia paid compensation to passengers on those flights, *id.* at 28-45, and how much compensation Iberia paid. *Id.* Plaintiffs seek compensation for cancelled and delayed flights, so this information is helpful to the Court's determination of the pertinent issues.

Iberia's contention that Rhoden's report is neither reliable nor relevant because it is not possible to identify class members using Rhoden's aggregated database and queries is beside the point. By framing its argument in this manner, Iberia misconstrues the meaning of "reliable" in the context of a motion to strike pursuant to Rule 702. The Court's task is simply to ensure that Rhoden's work is "reliable" in the sense that Rhoden knows how to manipulate information databases and withdraw accurate information out of them. Whether the information Rhoden has produced from the databases is "reliable" enough to be a sufficient basis to certify a class in this case is a separate question that is not before the Court on this motion. That is a question that goes to the weight or "probativeness" of Rhoden's report, not its admissibility. *See Brazemore v. Friday*,

8

478 U.S. 385, 400 (1986) ("Normally, the failure to include variables will affect the analysis' probativeness, not its admissibility."); *accord Adams*, 231 F.3d at 423 (7th Cir. 2000); *Bolden v. Walsh Group*, 2012 WL 1079898, at *4 (N.D. Ill. Mar. 30, 2012) (same); *Obrycka v. City of Chicago*, 2011 WL 2600554, at *7-8 (N.D. Ill. June 29, 2011) (admitting statistical analysis expert over objection that he "overcount[ed]," because such issues can be raised on cross examination); *see also AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993) ("While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, . . . such situations will be rare," and generally, "any shortcomings in the survey results go to the proper weight of the survey and should be evaluated by the trier of fact."); *Dyson Inc. v. Bissell Homecare, Inc.*, 2013 WL 2936453, at *3 (N.D. Ill. June 14, 2013) (same); *Wielgus v. Ryobi Tech., Inc.*, 2012 WL 3643682, at *5 (N.D. Ill. Aug. 23, 2012) ("[I]n arguing that Holt's tests on the 2008 saw do not bear on its efficacy in 2005, the defendants are attacking the results of his tests. That they can do at trial, but at this stage in the game, this court must focus on the methods, not the results.").

Of course, Rule 702(b) also requires that an expert's "testimony [be] based on sufficient facts or data." In this vein, Iberia relies on *Sportmart, Inc. v. Spirit Manufacturing*, 2000 WL 343467, at *4 (N.D. Ill. Mar. 30, 2000), *Auto Industry Supplier Employee Stock Ownership Plan v. Ford Motor Co.*, 435 F. App'x 430, 454 (6th Cir. 2011), and *BP Amoco Chemical Co. v. Flint Hills Resources, LLC*, 697 F.

Supp. 2d 1001, 1032 (N.D. Ill. 2011), for the proposition that Rhoden must be "knowledgeable about . . . how the original data was collected." R. 225 at 13; *see also* R. 196 at 22-23. However, in *Sportmart*, the charts the plaintiff relied on contained indisputably incorrect information, 2000 WL 343467, at *3; in *Auto Industry Supplier*, the source and accuracy of the data was in question, 435 Fed. Appx. at 454; and in *BP Amoco* the question was whether a proper evidentiary foundation existed for the underlying data. 697 F. Supp. 2d at 1033. By contrast, Iberia here, unsurprisingly, does not dispute the accuracy of the data, which it collected itself. Rather, Iberia argues that the data it provided to Plaintiffs is not sufficient to serve as the basis for class certification. But, again, as the Court previously explained, whether this data is sufficient to serve as the basis to certify the class is a separate question—not at issue here—which the Court will address in if and when it becomes necessary to do so. The question at issue on this motion—how reliably Rhoden has "crunched" the data—is not predicated upon the data's sufficiency for class certification purposes.[2]

Therefore, Iberia's motion to strike Rhoden's report and testimony, R. 194, is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated:  September 23, 2013

---

[2] For these same reasons, Rhoden's report is admissible under Federal Rule of Evidence 1004 "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."