# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THEODOROS GIANNOPOULOS, ALEXANDRA
GIANNOPOULOS, JAMES VARSAMIS,
LAUREN MITCHELL VARSAMIS, ON BEHALF
OF THEMSELVES AND ALL OTHER SIMILARLY
SITUATED,

        Plaintiffs,

    v.

IBERIA LÍNEAS AÉREAS DE ESPAÑA, S.A.,
OPERADORA, SOCIEDAD UNIPERSONAL,

        Defendant.

No. 11 C 775

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiffs are four individuals who purchased airline tickets for travel between the United States and Europe and for at least part of their trip traveled on aircraft operated by Iberia Líneas Aéreas de España ("Iberia"). *See* R. 156. Plaintiffs' flights were delayed, and they bring a putative class action alleging breach of contract (Count I) and violation of a European Union regulation that requires compensation for airline delays under certain circumstances (Count II). *Id.* Pursuant to Federal Rule of Civil Procedure 12(c), Iberia moves for judgment on the pleadings on the claim that seeks relief for violation of the EU regulation (Count II).[1] R. 170. For the following reasons, Iberia's motion is granted.

---

[1] A separate decision on Iberia's motion for summary judgment on the Varsamises Plaintiffs' breach of contract claim in Count I is being issued concurrently with this Opinion and Order.

## Background

European Union Regulation No. 261/2004 ("EU 261") requires airlines to compensate airline passengers for certain delayed and canceled flights departing from or arriving at airports in the European Union. *See* R. 156-1 (EU 261 Arts. 3, 5-7). The Preamble states:

> Member States should ensure and supervise general compliance by their air carriers with this Regulation and designate an appropriate body to carry out such enforcement tasks. The supervision should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law.

*Id.* ¶ 22. Article 15 of the regulation also states:

> the passenger shall . . . be entitled to take the necessary proceedings before the competent courts or bodies.

*Id.* Art. 15(2). And Article 12 states that "[t]his Regulation shall apply without prejudice to a passenger's rights to further compensation." *Id.* Art. 12(1). Further, Article 16 provides:

> (1) Each Member State shall designate a body responsible for the enforcement of this Regulation . . . .
>
> (2) Without prejudice to Article 12, each passenger may complain to any body designated under paragraph 1, or to any other competent body designated by a Member State.

*Id.* Art. 16(1), (2). In addition to modifying the word "law" in the Preamble, the word "national" is used in Article 14 to modify the phrase "designated body referred to in Article 16." *Id.* Art. 14(2). The regulation does not mention the United States or its courts.

## Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A Rule 12(c) motion is subject to the same standard as a Rule 12(b)(6) motion. *See id.* A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

3

## Analysis

### A.    Private Right of Action in United States Courts

The fact that EU 261 is a foreign law does not prohibit the Court from enforcing it. Courts in the United States often have occasion to apply and enforce foreign law. Most commonly, this occurs when a court sitting in diversity addresses a "private law" claim such as a tort or contract claim.[2] *See, e.g., ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 732 (7th Cir. 2003) ("The Canadian law of attorney-client relations is hardly such an alien body of doctrine that only a judge steeped in its tradition could fathom its tenets. Nor is a U.S. judge's desire to avoid the burden of mastering a new legal subject an adequate reason to send litigants packing [to a Canadian court]."); *Capital Markets Int'l, Ltd. v. Geldermann*, 182 F.3d 921, 1999 WL 439405, at *4 (7th Cir. June 21, 1999) ("We agree with the district court that under Illinois's choice of law rules, English law would govern these causes of action [for fraudulent misrepresentation]."); *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 843-48 (7th Cir. 1999) (applying Mexican tort law); *Viera v. Eli Lilly and Co.*, 2010 WL 3893791, at *4-5 (S.D. Ind. Sept. 30, 2010) (Brazilian tort law). United States courts may also enforce foreign "public law." *See LaSala v. Bordier et Cie*, 519 F.3d 121, 126 (3d Cir. 2008) (applying Swiss securities

---

[2] Courts and legal scholars have long distinguished between private law—e.g., tort or contract law—and public law—e.g., criminal, tax, antitrust or securities law. *See* William S. Dodge, *Breaking the Public Law Taboo*, 43 Harv. Int'l L.J. 161, 161-62 (2002); *see also Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.)*, 346 U.S. 485, 496 (1953) ("Federal law has largely developed and expanded as public law in this latter sense. It consists of substituting federal statute law applied by administrative procedures in the public interest in the place of individual suits in courts to enforce common-law doctrines of private right.").

fraud statute); *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir. 1998) (instructing district court to apply copyright statutes of 18 foreign nations).

Nevertheless, for the Court to have the power to enforce EU 261, and for Plaintiffs to have a cause of action in the United States under EU 261, the legislative body that enacted the regulation—the European Commission—must have granted U.S. courts the power to enforce EU 261, or at least the European Commission must not have prohibited U.S. courts from doing so. That a legislature may prescribe which courts may enforce the laws the legislature enacts is a principle familiar to U.S. courts. *See Palmore v. United States*, 411 U.S. 389, 401 (1973) ("The judicial power of the United States . . . is (except in enumerated instances, applicable exclusively to this court) dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress, who possess the sole power of creating the tribunals (inferior to the Supreme Court) . . . and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.") (internal quotation marks omitted); *Yang v. I.N.S.*, 109 F.3d 1185, 1195 (7th Cir. 1997) ("As a practical matter, the right to obtain review, in any court, on the theories our petitioners advance is gone. That is the point of the legislation. Congress wanted to expedite the removal of criminal aliens from the United States by eliminating judicial review . . . .").

The parties agree that EU 261 creates a private right of action for individuals. R. 172 at 5; R. 185 at 6 (citing cases). Iberia argues, however, that EU 261 does not permit the courts of the United States or any other non-EU Member State to enforce EU 261. R. 172 at 5. Iberia points to Article 16, paragraph 1, which requires "[e]ach Member State [to] designate a body responsible for the enforcement of this Regulation," and which states further in paragraph 2 that "each passenger may complain to any body designated under paragraph 1, or to any other competent body designated by a Member State." R. 172 at 4-5. Iberia contends that this language requires EU 261 to be enforced by bodies designated by EU Member States.

Plaintiffs argue, to the contrary, that the European Commission did not prohibit enforcement of EU 261 by U.S. courts, because EU 261 permits passengers "to seek legal redress from courts under procedures of national law," and "to take the necessary proceedings before the competent courts or bodies." R. 185 at 7. Based on this language, Plaintiffs contend that there is nothing in EU 261 showing that the European Commission intended "to limit the forums exclusively to those in EU-member countries." *Id*. Plaintiffs argue that there is further support for their argument in Article 16—the same provision Iberia relies on—which states that its procedures for passengers to complain to designated bodies are "[w]ithout prejudice to Article 12," which states that "[t]his Regulation shall apply without prejudice to a passenger's rights to further compensation." And as Plaintiffs point out, the Preamble contemplates that "the supervision" of the Member States embodied in

6

establishing designated complaint bodies "should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law." R. 156-1 (EU 261 ¶ 22).

The difficulty with Plaintiffs' argument is that "national" does not have the world-wide connotation Plaintiffs hope it does. Article 14 uses the word "national" to modify the phrase "designated body referred to in Article 16." And as the Court discussed above, EU Member States are the only nations that can "designate" enforcement bodies under EU 261. This shows that the word "national," as used in EU 261, refers to not just any nation, but specifically the EU Member States. Thus, when the EU 261 Preamble mentions "courts under procedures of national law," it is referring to courts of EU Member States, and not the courts of the United States or any other non-EU nation. Notably, two courts in this district have recently endorsed similar reasoning and held that EU 261 does not provide a private right of action in U.S. courts. *See Volodarskiy v. Delta Air Lines, Inc.*, ___ F. Supp. 2d ___, 2013 WL 5645776, at *6 (N.D. Ill. Oct. 16, 2013) (Chang, J.); *Lozano v. Continental Airlines, Inc.*, 2013 WL 5408652, at *3 (N.D. Ill. Sept. 26, 2013) (Nordberg, J.). The Court sees no reason to deviate from these holdings.

In support of their claims, Plaintiffs cite the Court's earlier ruling (Lefkow, J.) that "[a]lthough Iberia claims that European enforcement was intended to be exclusive, it provides no support for this contention, nor has the court been able to find any." *Giannopoulos v. Iberia Líneas Aéreas de España*, 2011 WL 3166159, at *7 (N.D. Ill. July 27, 2011). Plaintiffs also cite another case from this district in which

the court held that "plaintiffs have a right to proceed in this Court, despite the existence of an alternative enforcement mechanism under the EU. There is nothing in EU 261 that suggests otherwise." *Polinovsky v. Deutsche Lufthansa, AG*, 2012 WL 1080415, at *7 (N.D. Ill. Mar. 30, 2012) (Coleman, J.). Both of these decisions, however, concerned allegations that the airlines in question breached their contracts with passengers by failing to comply with EU 261. Both courts held that because the airlines had committed themselves to complying with EU 261 in individual contracts with the passengers independent of the authority of the regulation itself, the question of whether EU 261 itself provided a private right of action was not at issue. Rather, the contracts between the airlines and the passengers provided the bases for the actions. Notably, Plaintiffs in this case have also alleged a breach of contract claim based on failed promises to comply with EU 261, and that claim is not at issue in this motion.[3] Thus, the cases Plaintiffs cite holding that plaintiffs may bring claims for breach of contract for failure to comply with EU 261 are not relevant to claims for violation of the regulation itself.

Plaintiffs' argument that "this is simply a choice of law issue" is illogical. R. 185 at 8. A choice of law issue arises when a plaintiff brings a claim based on certain alleged facts and the court is required to decide what jurisdiction's laws apply to decide whether the plaintiff is entitled to relief. Here, Plaintiffs have already chosen the law in bringing a claim for relief premised on the allegation that Iberia violated EU 261. Thus, there cannot be a choice of law question here.

---

[3] *See* footnote 1, supra.

Plaintiffs also argue that *McKesson v. Islamic Republic of Iran*, 672 F.3d 1066 (D.C. Cir. 2012), supports their contention that EU 261 creates a private right of action cognizable in U.S. courts, because the court in *McKesson* held that the plaintiff could bring a claim in U.S. courts under an Iranian statute. R. 185 at 9. But as the Court began its analysis, whether U.S. courts can apply foreign law is not at issue here. Rather, the question is whether U.S. courts are permitted to enforce EU 261, specifically. In *McKesson*, a treaty explicitly provided that a plaintiff could ask a U.S. court to enforce Iranian law against the Islamic Republic of Iran. That is the sort of basis that is lacking here, and which prevents the Court from enforcing a claim under EU 261.[4]

## B. Preemption

EU 261 does not create a cause of action in U.S. courts, and the Court's holding on this issue is sufficient to grant Iberia's motion to dismiss. Nevertheless, for purposes of completeness, the Court will address Iberia's argument that the

---

[4] Iberia also argues that if the Court were to find that U.S. courts may enforce EU 261, Plaintiffs' class allegation must be dismissed because the European Union does not permit such a procedure. R. 172 at 10. Although it is not necessary for the Court to reach this argument, the Court notes briefly that the Court would not prevent Plaintiffs from proceeding under Federal Rule of Civil Procedure 23 if they had a cognizable claim under EU 261. Iberia relies on the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), to argue that Rule 23 should not "displace procedural laws barring class action recovery if the procedural law also defines substantive rights," and "EU 261 substantively incorporates European Union procedural law." R. 172 at 11. But, despite the fractured opinions in *Shady Grove*, a majority held that plaintiffs could seek to maintain a class action under Rule 23 despite a state law that prohibited class actions in the relevant circumstances. *See* 559 U.S. at 416 (Stevens, J., concurring). The Court here would likely have to take a similar view of Rule 23's applicability in relation to EU 261.

Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713, preempts EU 261. R. 172 at 12.

ADA § 41713(b) provides that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." The statute also provides that "'State' means a State, the District of Columbia, and a territory or possession of the United States." *Id.* § 41713(a). Plaintiffs of course argue that the express language of the statute limits its preemptive scope to "State" law and not foreign law like EU 261.

Despite the fact that the express language of § 41713(b) prohibits States, and not foreign nations, from "enact[ing] or enforce[ing]" laws or regulations that fall within the statute's substantive scope, Iberia argues that § 41713(b) prohibits States from "enforcing" foreign regulations because the language "law, regulation, or other provision" is not modified by the word "State." R. 190 at 10. Iberia grants that the statute applies only to enforcement by "States," but contends that States are prohibited from enforcing *any* regulation "related to a price, route, or service of an air carrier that may provide air transportation," whether enacted by States or otherwise. Iberia argues, further, that the statute's prohibition on "State" enforcement of regulations constrains the Court in this case because the Court is sitting in diversity. R. 190 at 11-12.

10

Other courts have rejected the argument Iberia puts forward here. Recently in this district, Delta Air Lines moved to dismiss the exact claim under EU 261 that is at issue here by making the same argument as Iberia. Judge Chang reasoned:

> While it is true that "a law, regulation, or other provision" is not directly modified by the word "State," when the provision is read as a whole, it is clear that a State is the political body that would be enacting or enforcing its own laws and regulations. In other words, for preemption to be triggered, the law in question must be of a State, which the statute clearly defines. Other sub-sections of the provision support this interpretation. *See*, *e.g.*, § 41713(b)(3) (recognizing that the preemption provision does not limit a State from "carrying out its proprietary powers and rights"). Read this way, the word "enforce" in the provision still has meaning outside of entertaining lawsuits brought under foreign law: "enforce" extends the scope of the preemption provision to state common-law claims. *See United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000) (recognizing that suits based on state common law are included for purposes of preemption analysis).

*Volodarskiy v. Delta Air Lines, Inc.*, ___ F. Supp. 2d ___, 2013 WL 5645776, at *6 (N.D. Ill. Oct. 16, 2013). Additionally, in *LaSala v. Bordier et Cie*, 519 F.3d 121 (3d Cir. 2008), the plaintiff made a similar argument with regard to the preemption provision of the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(1), seeking to have a federal court in New Jersey apply a Swiss statute. The court reasoned that if Swiss law was the applicable law, "[t]o conclude that, within the intendment of SLUSA , those claims are 'based upon the . . . law of' New Jersey would require attributing to Congress a subtlety of such exquisite reach as to have no place in the legislative process." 519 F.3d at 140. *See also Comrie v. IPSCO Inc.*, 2008 WL 5220301, at *4-5 (N.D. Ill. Dec. 10, 2008) (holding that ERISA's

preemption provision, which expressly applied only to state law, did not apply to foreign law); *but see LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 238 (S.D.N.Y. 2007) (holding that "Swiss law [is] state law for purposes of SLUSA" and its preemption provision). The Court finds the reasoning of Judge Chang and the Third Circuit persuasive and holds that the express language of § 41713(b) does not preempt a cause of action under EU 261.

Express preemption, however, is not the only form of preemption. Despite Iberia's failure to raise it in its brief, the Court is compelled to discuss implied preemption to fully address this issue.[5]

> Implied preemption comes in two types: (1) field preemption, which arises when the federal regulatory scheme is so pervasive or the federal interest so dominant that it may be inferred that Congress intended to occupy the entire legislative field and (2) conflict preemption, which arises when state law conflicts with federal law to the extent that "compliance with both federal and state regulations is a physical impossibility," or the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Planned Parenthood of Ind. v. Comm'r of Ind. State Dept. of Health*, 699 F.3d 962, 984 (7th Cir. 2012) (quoting *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012)).

---

[5] The presence of an express preemption clause does not preclude the possibility that a statute is preempted because Congress intends to occupy a certain field. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1048 (7th Cir. 2013) (analyzing a statute for field preemption despite the presence of an express preemption clause). *But see Arizona v. United States*, 132 S.Ct. 2492, 2520 (2012) (Scalia, J., dissenting) ("[The majority] quotes our jurisprudence to the effect that an 'express pre-emption provisio[n] does *not* bar the ordinary working of conflict pre-emption principles.' True enough—*conflict* preemption principles. . . . All that is a classic description not of *conflict* pre-emption but of *field* pre-emption, which (concededly) does not occur beyond the terms of an express pre-emption provision.") (emphases in original; internal citations omitted).

The substantive scope of § 41713(b) extends to a law or regulation that "'relates to' airline rates, routes, or services, *either* [a] by expressly referring to them *or* [b] by having a significant economic effect upon them." *S.C. Johnson & Son, Inc. v. Transport Corp. of Am., Inc.*, 697 F.3d 544, 553 (7th Cir. 2012) (emphases in original).

Here, there can be no question that "the federal regulatory scheme is so pervasive . . . that it may be inferred that Congress intended to occupy the entire legislative field," *Planned Parenthood*, 699 F.3d at 984, of "service" provided by "an air carrier."[6] Congress already expressly prohibits any "State, political subdivision of a State, or political authority of at least 2 States," or "the District of Columbia, [or] a territory or possession of the United States" from regulating this field. 49 U.S.C. § 41713(a), (b). The federal regulatory scheme here is not merely pervasive but preempts *all* state and local regulation.

Furthermore, it is apparent that the delay-compensation scheme EU 261 creates is "related to" the "service" of the "air carrier." The Supreme Court has described the ADA's preemption provision as "broad[]," and held that it preempts a state consumer fraud statute. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 225 (1995). Additionally, the Second Circuit has held that the ADA preempted a state law requiring that airlines provide food, water, and other basic amenities to passengers onboard a delayed and grounded aircraft. *See Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 225 (2d Cir. 2008). And the ADA already provides a means for

---

[6] "Air carrier" includes "foreign air carrier." *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 697 F.3d 154, 160 (2d Cir. 2012).

passengers to register complaints. *See* 49 U.S.C. § 42302. The compensation scheme EU 261 creates fits squarely in this subject matter area.

The question is whether Congress intended this field to extend to foreign laws and regulations. As the Court noted previously, the Court is aware of three cases that addressed the question of whether an express preemption provision that mentions only state law should also preempt foreign law. *See LaSala v. Bordier et Cie*, 519 F.3d 121; *Volodarskiy v. Delta Air Lines, Inc.*, ___ F. Supp. 2d ___, 2013 WL 5645776; *Comrie v. IPSCO, Inc.*, 2008 WL 5220301. The courts in those three cases found that the express language of the U.S. statute did not preempt the foreign law, and did not address whether foreign law was impliedly preempted. But, unlike here, *LaSala* and *Comrie* were both cases that involved claims for conduct that occurred entirely within the foreign jurisdictions. In neither of those cases was there a suggestion that Congress intended to preempt the application of foreign law to the conduct that occurred within the relevant foreign jurisdiction that was at issue in those cases. Moreover, in neither of those cases was there any indication that Congress intended for the U.S. statutes containing the preemption provisions at issue to apply extraterritorially.[7] Here by contrast, Plaintiffs seek to apply EU 261 to flight itineraries that began or ended in the United States. Congress expressly intended for the ADA to apply to "foreign air carriers" and flights that travel between the U.S. and a foreign country. *See, e.g.*, 49 U.S.C. § 40102(23) ("'foreign air

---

[7] Although the facts of *Volodarskiy v. Delta Air Lines, Inc.*, cannot be similarly distinguished, that case did not address the possibility of implied prevention either. ___ F. Supp. 2d ___, 2013 WL 5645776.

transportation' means the transportation of passengers . . . between a place in the United States and a place outside the United States"); 49 U.S.C. § 41708 (requiring foreign air carriers to file service quality reports regarding delays); 49 U.S.C. § 41706 (prohibiting smoking on foreign air carrier flights to and from the U.S.). Thus, the ADA's field and the field of EU 261 overlap in both substance and territorial application.

Additionally, EU 261 applies to flights departing from the U.S. only when the flight is operated by an EU air carrier. *See* R. 156-1 (EU 261 Art. 3(1)(b)).[8] To the extent that certain U.S. air carriers are not also EU air carriers, EU 261 discriminates among air carriers, which is contrary to the ADA's goals, and creates a regulatory environment analogous to the patchwork regulation that preemption doctrine is intended to avoid. *See In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 694 (9th Cir. 2011) ("Reading the statutory scheme to preempt state regulation of domestic air carriers while permitting such regulation of foreign air carriers would create a confusing patchwork of regulations for airline passengers to navigate, as their decision to purchase tickets for international flights would carry different consequences depending on whether they bought tickets from a U.S.-based carrier or an airline headquartered in a foreign country. Such a result would not be consonant with Congress's express purpose in enacting the statute.").

---

[8] Article 3(1)(b) provides, "This Regulation shall apply to passengers departing from an airport located in a third country to an airport situated in the territory of a Member State to which the treaty applies . . . if the operating air carrier of the flight concerned is a Community carrier." R. 156-1. Additionally, "'Community carrier' means an air carrier with a valid operating license granted by a Member State . . . ." *Id.* Art. 2(c).

Therefore, even if the European Commission intended that U.S. courts be permitted to enforce its provisions—which the Court has held it did not—the Court would dismiss Plaintiffs' claim on implied preemption grounds because it is contrary to Congress's purpose in enacting the ADA.

## Conclusion

Therefore, Iberia's motion, R. 170, is granted, and Count II of the complaint is dismissed as to all Plaintiffs.

ENTERED:

_Thomas M. Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated:  February 12, 2014