**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THEODOROS GIANNOPOULOS, ALEXANDRA GIANNOPOULOS, JAMES VARSAMIS, LAUREN MITCHELL VARSAMIS, ON BEHALF OF THEMSELVES AND ALL OTHER SIMILARLY SITUTATED, <br><br> Plaintiffs, <br><br> v. <br><br> IBERIA LÍNEAS AÉREAS DE ESPAÑA, S.A., OPERADORA, SOCIEDAD UNIPERSONAL, <br><br> Defendant. | No. 11 C 775 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

James Varsamis and Lauren Mitchell Varsamis purchased airline tickets for travel between the United States and Europe and for part of their trip traveled on aircraft operated by Iberia Líneas Aéreas de España ("Iberia"). *See* R. 156. Their return flight was delayed, and they bring a putative class action alleging breach of contract (Count I) and violation of a European Union regulation that requires compensation for airline delays under certain circumstances (Count II). *Id.* Iberia has moved for summary judgment on the breach of contract claim pursuant to Federal Rule of Civil Procedure 56. R. 158. For the following reasons, Iberia's motion is granted.

**Background**

On March 28, 2011, the Varsamises purchased two roundtrip tickets on American Airline's website for transportation from Dallas to Italy. R. 176 ¶¶ 3-4. American issued an electronic ticket receipt to the Varsamises reflecting their travel itinerary and the terms and conditions governing their transportation. *Id.* ¶ 6. The receipt showed that the Varsamises were scheduled to fly from Dallas to Madrid on June 10 on American flight 36, and from Madrid to Venice on June 11 on American flight 5312, which was to be operated by Air Nostrum for Iberia. *Id.* ¶ 7. The Varsamises were then scheduled to depart from Rome to Madrid on June 25 on American flight 5664, which was also to be operated by Iberia, and then on to Dallas on American flight 37. *Id.*

The electronic receipt provided that "[a] summary of Terms and Conditions applicable to your travel is available . . . at www.aa.com/conditionsofcarriage." R. 160-5 at 17. The document at this web address is titled "Conditions of Carriage." The first paragraph of American's Conditions provides:

> Your ticket and the following Conditions of Carriage constitute the contract between you, the passenger, and American Airlines, Inc. ("American") and apply to all transportation provided by American (including transportation on codeshare partners[ ]) between points in the United States (including Puerto Rico and the U.S. Virgin Islands). Foreign air transportation is governed by applicable tariffs on file with the Department of Transportation. See Canadian General Rules Tariff and International General Rules Tariff [hyperlink to http://www.aa.com/i18n/Tariffs/AA1.html].

2

R. 160-3 at 47. The tariff applicable to American provides that it governs the conduct of:

> the air carrier issuing the ticket and all air carriers that carry or undertake to carry the passenger and/or his baggage thereunder or perform or undertake to perform any other services related to such air carriage.

R. 160-4 at 3. The Tariff also provides:

> Damages occasioned by delay are subject to the terms, limitations and defenses set forth in the Warsaw Convention and the Montreal Convention, whichever may apply. They include foreseeable compensatory damages by a passenger and do not include mental injury damages.

*Id.* at 19.

The second paragraph of American's Conditions provides that:

> American will act as an agent to issue tickets, check baggage and book reservations for transportation via other carriers which have interline agreements with American. Other carriers may have different terms and conditions applicable to their flights. These may be obtained directly from the other carriers.

R. 160-3 at 47.

On June 25, American flight 5664, operated by Iberia, was delayed in Rome for more than five hours, causing the Varsamises to miss their connection in Madrid. R. 176 ¶ 9. The Varsamises were booked on a flight to Dallas through Amsterdam that arrived in Dallas more than 24 hours later than originally scheduled. *Id.* ¶¶ 10-11. The Varsamises seek compensation for this delay under Iberia's Conditions of Carriage, which incorporate procedures for compensation described in European Union Regulation No. 261/2004 ("EU 261"). *Id.* ¶ 16. By

3

contrast, the express language of neither American's Conditions of Carriage nor the Tariff applicable to American provide for compensation in accordance with EU 261. *Id.* The Varsamises allege that they are in privity of contract with not only American but also Iberia in order to seek compensation pursuant to the provisions of EU 261, which Iberia's Conditions incorporate and American's Conditions do not.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Analysis

There is no dispute that the Varsamises' tickets are governed by the terms provided in and referenced by the electronic receipt they received from American when they purchased their tickets. The Varsamises also do not dispute that the

4

electronic receipt incorporates American's Conditions, and that American's Conditions refer to the Tariff with respect to foreign travel.

The Tariff governs the conduct of "the air carrier issuing the ticket and all air carriers that carry or undertake to carry the passenger and/or his baggage thereunder or perform or undertake to perform any other services related to such air carriage." R. 160-4 at 3. Since Iberia was set to "undertake to carry" the Varsamises from Rome to Madrid as the operator of American flight 5664, Iberia's conduct is governed as a "carrier" under the Tariff. The Tariff includes a provision regarding "[d]amages occasioned by delay," and this provision does not reference Iberia's Conditions of Carriage or EU 261. *See* R. 160-4 at 19. Thus, the Varsamises have no breach of contract claim based on Iberia's "Conditions of Carriage" or its reference to EU 261.

Nevertheless, the Varsamises allege that they are in privity of contract with Iberia, and thus can take advantage of EU 261's compensation provisions that Iberia's Conditions incorporate. The Varsamises point to the second paragraph of American's Conditions, which provides:

> American will act as an agent to issue tickets, check baggage and book reservations for transportation via other carriers which have interline agreements with American. Other carriers may have different terms and conditions applicable to their flight. These may be obtained directly from the other carriers.

R. 160-3 at 47. The Varsamises argue that this provision shows that American acted as Iberia's agent when it sold the Varsamises their tickets, and this agency relationship created a contract between Iberia and the Varsamises such that

5

Iberia's Conditions—and EU 261 by incorporation—apply to the Varsamises' travel. R. 174 at 6-8.

Iberia argues in opposition to the Varsamises' interpretation that this paragraph only applies to carriers with which American has "interline" agreements, and since American and Iberia have a "code share" agreement, this paragraph and its discussion of agency are irrelevant to Iberia. R. 179 at 3. This may be true, but the Varsamises' argument fails for a much simpler reason. The second paragraph of American's Conditions comes after the first paragraph, and the first paragraph of American's Conditions directs the ticket holder to the Tariff, thus preempting the rest of American's Conditions (at least with respect to the portion of the Varsamises' travel that was "foreign"). The first sentence of American's Conditions provides that the Conditions "apply to all transportation provided by American . . . between points in the United States." R. 160-3 at 47. By contrast, "[f]oreign air transportation," like the Varsamises' scheduled travel from Rome to Madrid, "is governed by applicable tariffs." *Id*. These two sentences clearly state that American's Conditions are not applicable to "foreign" travel, but instead are governed by the Tariff. Thus, the provision the Varsamises cite applies only to travel "between points in the United States," and has no force with respect to their foreign travel.

The Varsamises also contend that "Iberia has contractual obligations to Plaintiffs and the class" stemming from the "code share" agreement between American and Iberia. R. 174 at 13. Under the code share agreement, Iberia permits American to sell seats on Iberia's flights using American's flight designator codes,

6

which is what the Varsamises purchased. *See* R. 160-3 at 1-45. The Varsamises point to the indemnification provision of the code share agreement and argue that because it provides that the "operating carrier"—in this case Iberia—will indemnify the "marketing carrier"—in this case American—with respect to passenger claims due to "delay," Iberia "assum[es] full responsibility for passengers and property under its control." R. 174 at 15. But by its own terms this is simply an indemnification provision. The Varsamises do not explain how Iberia's agreement to indemnify American for passenger claims due to delays means that Iberia has a contractual relationship with the Varsamises, let alone a contractual relationship that incorporates EU Regulation 261.[1]

Despite the fact that the documents that constitute the Varsamises' contract for their air travel do not include Iberia as a party, the Varsamises still argue that they formed a contract with Iberia "upon check-in and boarding" Iberia's aircraft. R. 174 at 8. The Varsamises contend that "Iberia clearly invited Plaintiffs to board the Iberia-operated flight by allowing them passage on the aircraft, and Plaintiffs clearly accepted Iberia's transportation services by boarding Iberia's plane." *Id.* at 8-9. Putting aside Iberia's allegations that the Varsamises never actually checked-in

---

[1] The Varsamises also cite § 6.1 of the code share agreement, which provides that "[p]assenger traffic documents for use on the Codeshared Flights may be issued by either party, or by third parties with whom the parties from time to time have interline traffic agreements." R. 174 at 9. This provision appears to mean that either Iberia, American or another travel agent can issue tickets that will be honored under the agreement. The Varsamises do not explain why this provision should mean that Iberia's Conditions of Carriage should govern in the circumstances at issue here where it is undisputed that American issued the tickets under its Conditions.

or boarded their flight from Rome to Madrid that was delayed, R. 179 at 7 n.6, the Varsamises do not cite any authority to support the argument that boarding and flying on a plane creates a contract with the operator of the aircraft. The two cases the Varsamises cite in support of this argument involved written consumer contracts that provided for "acceptance by conduct." R. 174 at 8 (citing *Boomer v. AT&T Corp.*, 309 F.3d 404, 414-16 (7th Cir. 2002); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997)). These cases leave the Varsamises with their original problem, which is that they do not have a written contract with Iberia. Moreover, even if the Varsamises boarded the Iberia aircraft in question, and even if this conduct constituted an offer by Iberia accepted by the Varsamises, the Varsamises have not explained why Iberia's written Conditions of Carriage should govern that informal transaction.

## Conclusion

For the foregoing reasons, Iberia's motion for summary judgment, R. 158, is granted, and Count I of the complaint as alleged by the Varsamises is dismissed.[2]

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: February 12, 2014

---

[2] This order leaves undisturbed the Giannopouloses' breach of contract claim in Count I.